FRANK X. LO SACCO v. DEBRA M. YOUNG ET AL.
(5736)

DUPONT, C. J., DALY and FOTI, Js.

Argued May 12—decision released September 19, 1989

*Frank X. Lo Sacco,* pro se, the appellant (plaintiff).

*Joseph P. Petrucco* filed a brief for the appellees (defendants).

FOTI, J. The plaintiff appeals from the trial court's denial of his motion to set aside the verdict and for a new trial. The plaintiff claims that the trial court erred (1) in depriving him of a fair trial, (2) in permitting the defendants to cross-examine him with respect to two prior misdemeanor convictions, (3) in refusing to permit him to amend his complaint during the trial, (4) in failing to instruct the jury as requested, and (5) in other evidentiary rulings regarding damages. We find no error.[1]

---

[1] In *Lo Sacco* v. *Young,* 13 Conn. App. 827–28, 539 A.2d 149 (1988), we affirmed the trial court's denial of the plaintiff's motion to set aside the verdict and for a new trial. There, we determined that because the plaintiff's motion was untimely, our review was limited to ascertaining whether the trial court committed plain error. After reviewing the record and briefs, we concluded that the trial court had not. Id., 828. Our Supreme Court reversed, concluding that the five day filing limitation for motions to set aside the verdict and for a new trial is procedural rather than jurisdictional and that we erred in raising the issue of timeliness sua sponte and in restricting our review of the plaintiff's claims to plain error. *Lo Sacco* v. *Young,* 210 Conn. 503, 508–509, 555 A.2d 986 (1989). Accordingly, the case was remanded to this court with direction to decide the appeal on the briefs already filed by the parties in this court.

On November 5, 1985, the plaintiff instituted the present action for malicious prosecution against the three defendants, Debra M. Young, Lori Golab and Kim Billian, who are siblings. The court, with the consent of the parties, referred the matter to a state trial referee for a jury trial. On November 26, 1986, the jury returned a verdict in favor of the defendants, which was accepted by the trial court.

The jury could reasonably have found the following facts. The plaintiff and the defendant Young have joint custody of their son who was five years old on April 14, 1984. On that date, while his son was visiting the plaintiff, the defendants went to the plaintiff's home. A dispute arose among the parties and, as a result, the defendants claimed that the plaintiff assaulted the defendant Billian. In response to a telephone call made by one of the defendants, the police arrived, took statements from the parties, and arrested the plaintiff for assault in the third degree in violation of General Statutes § 53a-61. In October, 1984, after a three day jury trial, at which the defendants testified, the plaintiff was found not guilty. Thereafter, the plaintiff brought the present action to recover damages against the defendants for malicious prosecution.

I

The plaintiff's first claim is that he was deprived of a fair trial by comments made to him by the trial court in the jury's presence. He claims that these comments demonstrate that the trial court was biased against him because of his status as a pro se litigant.

We note initially that the plaintiff did not properly preserve this claim of judicial bias in that he did not move for a mistrial or disqualification of the trial judge. "As a general rule, even in cases alleging judicial bias, this court will not consider the issue on appeal where the party failed to make the proper motion for disqualification at trial. Practice Book § 4185; *Cameron*

v. *Cameron,* [187 Conn. 163, 168, 444 A.2d 915 (1982)]; *Trapp* v. *Trapp,* 6 Conn. App. 143, 145, 503 A.2d 1187 (1986); *Logical Communications, Inc.* v. *Morgan Management Corporation,* 4 Conn. App. 669, 670, 496 A.2d 239 (1985)." *Barca* v. *Barca,* 15 Conn. App. 604, 607, 546 A.2d 887 (1988). Failure to request recusal or move for a mistrial can be construed as the functional equivalent of consenting to the judge's presiding over the trial. *Timm* v. *Timm,* 195 Conn. 202, 205, 487 A.2d 191 (1985).

Although the plaintiff did not properly preserve his claim, because he represented himself during the trial and on appeal, we have reviewed the record to determine whether the plaintiff's claim has any merit. See *Rodriguez* v. *Mallory Battery Co.,* 188 Conn. 145, 149, 448 A.2d 829 (1982). We conclude that it does not. "Although we will not entirely disregard our rules of practice, we do give great latitude to pro se litigants in order that justice may both be done and be seen to be done. *Cersosimo* v. *Cersosimo,* 188 Conn. 385, 393, 449 A.2d 1026 (1982); *LaBow* v. *LaBow,* 13 Conn. App. 330, 336, 537 A.2d 157 (1988)." *Cugini* v. *Cugini,* 13 Conn. App. 632, 634, 538 A.2d 1060 (1988).

In support of his claim that the trial court's conduct was biased against him and denied him a right to a fair trial, the plaintiff points to a number of instances in the transcript where the trial court made comments or "admonished" him in the presence of the jury in a manner that, he maintains, unjustly prejudiced him in the jury's eyes because of his status as a pro se litigant.[2]

---

[2] The following are examples of comments by the court that the defendant found objectionable:

During direct examination of himself, the following discussion took place: "By Mr. Lo Sacco:

"Q. Mr. Lo Sacco—Will you give us some of your background?

"A. I was born in 1931. I have a brother, a younger brother, and an older sister, mother—

"The Court: (Interposing) Well, now, we're starting. I don't think it is

In addition, he claims that the court never advised the jury to disregard such admonishments made by the court to the plaintiff with regard to any procedural rulings or other conduct.[3]

necessary for the jury to know whether you have an older brother or sister or mother or father. This is not relevant to this case.

"Mr. Lo Sacco: Is there an objection, Your Honor?

"The Court: Well, I thought—

"Mr. Patrucco: If Your Honor wants an objection, I was going to make an objection anyway, but, here again, I'm at a terrible loss if Your Honor pleases.

"The Court: Well, I thought we were going to avoid this. Based upon our discussion before the jury came in, we were going to get all of your background, to that extent.

"Mr. Lo Sacco: Alright. May I have an exception, Your Honor?

"The Court: Exception is noted."

Later, during direct examination of himself and after the defendants objected, the court stated: "You can't be both a counsel and a witness and be everything all at once, Mr. Lo Sacco. When Mr. Patrucco raises an objection, it seems to me that he should be permitted to explain his objection without your interrupting him."

After an objection by the plaintiff the following colloquy occurred:

"The Court: Don't start talking constitutional rights to me, please? Because you try to buttress every little thing with a constitutional right.

"Mr. Lo Sacco: Yes.

"The Court: Just don't—it's beginning to wear on me.

"Mr. Lo Sacco: I'm sorry, Your Honor.

"The Court: There's no constitutional right involved here. Sustain the objection.

"Mr. Lo Sacco: May I have an exception, Your Honor?

"The Court: Exception is noted. I feel offended that the constitution is being used in this kind of situation. Go ahead."

In response to the defendants' objection to the plaintiff's cross examination the following colloquy ensued:

"Mr. Patrucco: Between cross-examination and constitution, Your Honor, I presume he can ask any question he wants.

"Mr. Lo Sacco: I object to that, Your Honor, that remark.

"The Court: Well, his point is well taken. You have no unlimited right to cross-examine. There are certain stringent rules within which you are able to cross-examine but you just cannot ask any question that comes out of your head on the basis that it is cross-examination."

[3] Although the plaintiff claims that the court never cautioned the jury to ignore its comments to counsel, the record discloses the court did, in fact, caution the jury. The court explained to the jury:

"The Court:  . . .  With all the experience I've had—and I've had a lot of it—this is the first time I've encountered a plaintiff who represents him-

A trial judge, as a minister of justice, should be both cautious and circumspect in his language and conduct and should conduct a trial with the highest degree of impartiality. *Barca* v. *Barca,* supra, 606.[4] " 'A judge . . . should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.' . . . The trial judge should be the exemplar of dignity and impartiality. *United States* v. *Cruz,* 455 F.2d 184, 185 (2d Cir.), cert. denied, 406 U.S. 918, 92 S. Ct. 1769, 32 L. Ed. 2d 117 (1972)." *Swenson* v. *Dittner,* 183 Conn. 289, 297, 439 A.2d 334 (1981). The trial court is responsible for maintaining a calm demeanor and the decorum of the courtroom. *State* v. *Gordon,* 197 Conn. 413, 425, 504 A.2d 1020 (1985). In this vein, the court should not make comments indicative of favor; *LaBow* v. *LaBow,* supra, 334; and should " 'refrain at all times from indulging in any improper remarks that may injure a litigant in the eyes of the jury.' *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 502, 101 A.2d 500 (1953)." *Stone* v. *Bastarache,* 188 Conn. 201, 206, 449 A.2d 142 (1982). " 'Not every departure from the norm, however, is reversible error. Prejudice to the unsuccessful party, or at least the possibility of it, must appear to have occurred before this court will be justified in depriving the successful party of the result of the litigation which, so far as it was affected by his actions, he has obtained by fair means.' " *Loda* v. *H.K. Sargeant & Associates, Inc.,* 188 Conn. 69, 86, 448 A.2d 812 (1982), quoting *Felix* v. *Hall-Brooke Sanitarium,* supra.

---

self on the witness stand and I'm having some problems handling it, so don't hold it against Mr. Lo Sacco; don't hold it against Mr. Petrucco. I just want you to understand the situation we find ourselves in now."

[4] Canon 3C of the Code of Judicial Conduct provides in pertinent part: "DISQUALIFICATION. (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party . . . ."

"The controlling standard is whether a reasonable person who is aware of all the circumstances surrounding the judicial proceeding would question the judge's impartiality." *LaBow* v. *LaBow,* supra.

The plaintiff's claim of judicial bias relates to his status as a pro se litigant. Where a party appears pro se, as he has every right to do, his rights and claim should " 'receive the same consideration as if he had been represented by an attorney.' *Martin* v. *Martin,* 188 Neb. 393, 397, 197 N.W.2d 388 (1972)." *Cersosimo* v. *Cersosimo,* supra, 394. Our courts attempt to be "solicitous of the rights of pro se litigants and . . . will endeavor to see that such a litigant shall have the opportunity to have his case fully and fairly heard . . . ." *Conservation Commission* v. *Price,* 193 Conn. 414, 421 n.4, 479 A.2d 187 (1984). Although we are lenient to parties who represent themselves, such leniency should not be invoked as to affect adversely the other parties' rights. *LaBow* v. *LaBow,* supra, 336. Furthermore, we will not wholly disregard our rules of practice, "adherence to which is necessary in order that the parties may know their rights and in order that the real issues in controversy may be presented and determined." *Rodriguez* v. *Mallory Battery Co.,* supra, 150 n.8.

Our review of the record indicates that although the trial court was mindful of the plaintiff's status as a pro se litigant, its action and rulings did not demonstrate bias. Rather, the transcript indicates the court's attempt to conduct the trial in a fair manner in order to protect the rights of *all* parties.

The trial court is permitted to take those steps necessary to ensure the orderly progress of the trial. *LaBow* v. *LaBow,* supra, 334. The transcript reveals that most of the comments by the court that the plaintiff finds objectionable related to proper procedure and the relevancy of certain evidence, or were made in response

to objections. The trial court's comments did not indicate a personal negative view of the plaintiff's claim; *Stone* v. *Bastarache,* supra; or its opinion as to the plaintiff's truthfulness; id.; nor did it show any "actual animosity" toward the merits of the plaintiff's case. *State* v. *Gordon,* supra, 426. In addition, the court cautioned the jury not to penalize the parties for its rulings and comments. Although the trial court at times demonstrated frustration and impatience with the plaintiff, we conclude that its statements were not adversarial but rather, were consistent with its role as an impartial arbiter, and did not deprive the plaintiff of a fair trial.

## II

The plaintiff's second claim is that the trial court erred in permitting the defendants to question him during cross-examination about two criminal misdemeanor convictions. The following facts are relevant to this issue. During cross-examination, the defendants asked the plaintiff about his work history. The plaintiff responded that he had "hardly worked at all" since April, 1982, and he voluntarily explained that he was unable to work as a result of two other arrests "precipitated" by the defendants. When the defendants queried further into this matter, the plaintiff explained that on two prior occasions involving the defendants he was falsely arrested but that those arrests did not result in convictions.[5] When the defendants proceeded to

---

[5] During cross-examination, the plaintiff testified as follows:

"Q. By the way, Mr. Lo Sacco, have you worked since April, 1982 . . . .

"The Witness: I have worked, hardly at all, because of the other arrests.

"By Mr. Patrucco:

"Q. I'm sorry?

"A. Because of the other arrests. The other arrests that they precipitated, I was in court after October.

"Q. You mean this arrest?

"A. No.

"Q. This April 14 arrest?

question the plaintiff further, the plaintiff objected. After a brief recess, the trial court permitted the defendants to impeach the plaintiff by questioning him about the two prior misdemeanor convictions. The scope of the defendants' inquiry was limited to the fact that the plaintiff was convicted and the defendants did not elicit information related to the underlying details of the offenses.

As a general rule, misdemeanor convictions are not admissible to impeach a witness' credibility. See General Statutes § 52-145; *State* v. *McDermott,* 190 Conn. 20, 25, 458 A.2d 689 (1983). In addition, judgments in criminal cases are not admissible in civil proceedings to prove the acts charged. *Page* v. *Phelps,* 108 Conn. 572, 588, 143 A. 890 (1928). Where, however, a party initiates testimony on a particular subject, which would ordinarily be inadmissible on other grounds, he is said to have "opened the door" to cross-examination by the adverse party on that subject. See *State* v. *Graham,* 200 Conn. 9, 13, 509 A.2d 493 (1986). Under these cir-

"A. No, the other arrests that your clients also precipitated against me.
"Q. You mean there are other arrests of you, sir?
"A. Yes.
"Q. Is that what you're trying to say?
"A. Two others, yes.
"Q. Two others?
"A. Yes. False arrests.
"Q. And, what kind—what did you say?
"A. False arrests.
"Q. False arrests?
"A. Yes.
"Q. And, sir, have those cases been disposed of?
"A. Yes, they have.
"Q. And, were they nolled?
"A. They—the prosecutor refused to prosecute. A year after I was arrested.
"Q. You have never been found guilty of any criminal act, is that what you want to tell the jury?
"A. Those two arrests, the prosecutor refused to, and that's the two that I'm talking about, prosecutor refused to prosecute."

cumstances the court may, in its discretion, permit further inquiry into a subject where the initiating party has made "unfair use of the evidence." Id. "This rule 'operates to prevent a [party] from successfully excluding inadmissible . . . evidence and then selectively introducing pieces of the evidence for his own advantage, without allowing [the adverse party] to place the evidence in its proper context.' " Id., quoting *United States* v. *Lum,* 466 F. Sup. 328, 334 (D. Del. 1979).

We emphasize that it was the plaintiff and not the defendants who placed before the jury evidence of the plaintiff's prior arrests. Moreover, the plaintiff introduced evidence of other arrests of his own volition and not in response to a particularized question by the defendants intended to elicit such evidence. By his own testimony, the plaintiff invited cross-examination by the defendants to correct both the record and the false impression given to the trier of fact. Because the plaintiff initiated the discussion into his prior convictions, he cannot now be heard to complain that it caused him an injustice. If a litigant chooses this course, he should be obliged to suffer the consequences of his indiscreet testimony. Accordingly, the trial court did not abuse its discretion in permitting the defendants to cross-examine the plaintiff with respect to his prior convictions.[6]

---

[6] The trial court permitted the following questions with respect to Mr. Lo Sacco's prior convictions:

"Q. Mr. Lo Sacco, I simply want to go back, if I may, to what you testified earlier, I don't believe it was in response to any of my questions but you did testify that apart from the case in which we are involved with now, where you had been arrested, that there were two other occasions that you had been arrested. Is that correct? Did you testify to that?

"A. I did, that there were two others, yes.

"Q. And that, in each case, the prosecutor refused to prosecute those cases, is that correct?

"A. Approximately a year later, yes.

"Q. Now, sir, let me refer to a case of *State* v. *Frank Lo Sacco,* which was tried in this court, and the case number is CR9-71332; and it involved a charge—

## III

The plaintiff next claims that the trial court erred in failing to grant his motion to amend his complaint

"Mr. Lo Sacco: Objection, Your Honor.

"The Court: Objection is overruled. Let him ask his question.

"By Mr. Patrucco:

"Q. —and the case was—involved criminal trespass in which you were found—

\* \* \*

"Q. —in which you were found guilty. Do you recall that case?

\* \* \*

"A. Yes.

"Q. And, I direct you further to an additional case of *State* v. *Frank Lo Sacco*, in this court again, CR9-71333. And that was for disorderly conduct, Sir. And, you were found guilty of disorderly conduct. Is that not true?

"Mr. Lo Sacco: Objection, Your Honor.

"The Court: Objection is overruled.

"Mr. Lo Sacco: May I have an exception, Your Honor?

"The Court: Exception is noted.

"By Mr. Patrucco:

"Q. Will you answer the question?

"A. Yes, it is true.

"Q. So that your prior statement to the effect that the State refused, in the only two other cases which you were prosecuted, refused to prosecute, is not accurate, is it?

"A. Your question is not accurate. . . .

"The Court: You may answer that one yes, or no. And if you have an explanation for that, you will be allowed, later on, after Mr. Patrucco finishes with his cross-examination, you will be allowed then to make your statement. So you may answer this one yes or no. . . .

"Mr. Lo Sacco: Objection, Your Honor.

"The Court: I'm not listening to any objections, you answer that question yes or no.

"The Witness: I can't answer it yes or no, Your Honor. It's mischaracterizing—

"The Court: You answer it yes or no and you will make your explanation later on.

"Are we on record now?

"The Monitor: Yes, we are.

"The Court: You answer that yes or no.

"The Witness: No."

The plaintiff argued that his conviction record had been misrepresented at trial. The plaintiff has been before this court on two prior criminal mat-

during the trial to add a paragraph alleging deprivation of his constitutional rights and a claim for punitive damages in his prayer for relief.[7] The court denied the motion, finding that the amendment constituted a new cause of action and was, therefore, untimely and inappropriate.

" 'While our courts have been liberal in permitting amendments; *Johnson* v. *Toscano,* 144 Conn. 582, 587, 136 A.2d 341 (1957); this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. *Cummings* v. *General Motors Corporation,* 146 Conn. 443, 449–50, 151 A.2d 884 (1959). The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable

---

ters. In one case, after a jury trial, the defendant was acquitted of criminal trespass in the first degree and convicted of disorderly conduct. On appeal, this court upheld the plaintiff's conviction for disorderly conduct. *State* v. *Lo Sacco,* 11 Conn. App. 24, 525 A.2d 977 (1987). In a separate action, the plaintiff was convicted of criminal trespass in the first degree, and on appeal we found that there was insufficient evidence to support the conviction and remanded the case to the trial court with direction to render a judgment of acquittal. *State* v. *Lo Sacco,* 12 Conn. App. 172, 529 A.2d 1348 (1987). During oral argument in this court, the plaintiff conceded that the trial court gave him the opportunity to explain to the jury that in the second case his conviction for criminal trespass was overturned, but that he chose not to as part of his trial strategy.

[7] The plaintiff proposed the following amendment to his complaint: "As a further direct and proximate result of the acts of the defendants, and each of them, as described herein, the plaintiff was deprived of his constitutional rights, which rights are secured to him by the provisions of the United States constitution under various amendments, and which rights that have been violated are as follows: freedom from illegal seizure of his person; freedom from illegal detention; freedom from malicious prosecution; freedom from intimidation and humiliation; equal protection of the laws; freedom to enjoy life, liberty, and property; the right as parent to the care, custody and nurture of his son."

delay of the trial. *Freccia* v. *Martin,* 163 Conn. 160, 164, 302 A.2d 280 (1972).' *Beckman* v. *Jalich Homes, Inc.,* 190 Conn. 299, 302–303, 460 A.2d 448 (1983). . . . It is within the discretion of the trial court to grant or deny an amendment, and a decision to deny an amendment during a trial will not be disturbed unless there is a clear abuse of that discretion. *Lawson* v. *Godfried,* 181 Conn. 214, 216, 435 A.2d 15 (1980)." *Farrell* v. *St. Vincent's Hospital,* 203 Conn. 554, 561–62, 525 A.2d 954 (1987). Our review of the record in this case and the plaintiff's proposed amendment indicates that the court acted within its broad discretion in denying the plaintiff permission to amend his complaint during the trial.

## IV

The plaintiff's next claim is that the trial court erred in failing to charge the jury as he requested and that the charge as given misled the jury. In his request to charge, the plaintiff requested an instruction on false arrest or imprisonment. The plaintiff, when asked by the court what he considered to be his cause of action, replied: "There's no title to this. This is whatever it says in the complaint." On another occasion, the plaintiff admitted that his cause of action alleged malicious prosecution.[8] The trial court denied the plaintiff's request for an instruction on false imprisonment, and instructed the jury on the plaintiff's complaint brought for a cause of action sounding in malicious prosecution.

---

[8] During the course of the plaintiff's direct examination, after an objection by counsel for the defendants, the court asked:

"The Court: Of what relevance is this? This is a suit for malicious prosecution, is it not?

"Mr. Lo Sacco: Yes, Your Honor. Also a deprivation of constitutional rights in which I claim the constitution right—

"The Court: (Interposing) There is no constitutional right here that's involved, so let's get that squared away."

Although the plaintiff has a constitutional right to a jury trial on the cause of action alleged in his complaint; Conn. Const., art. I, § 19; *Wochek* v. *Foley,* 193 Conn. 582, 586, 477 A.2d 1015 (1984); he may not allege one cause of action and recover upon another. *Web Press Services Corporation* v. *New London Motors, Inc.,* 203 Conn. 342, 359, 525 A.2d 57 (1987); *Malone* v. *Steinberg,* 138 Conn. 718, 721, 89 A.2d 213 (1952). We have reviewed the plaintiff's complaint and agree with the trial court that it alleges a cause of action for malicious prosecution and not false arrest or imprisonment. Accordingly, we conclude that the trial court correctly instructed the jury.

We reach this result after reviewing the plaintiff's complaint. "False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another. *Felix* v. *Hall-Brooke Sanitarium,* [supra, 499]." *Green* v. *Donroe,* 186 Conn. 265, 267, 440 A.2d 973 (1982). False imprisonment is categorized as an intentional tort for which the remedy at common law was an action for trespass. Id., 268. "[I]n the case of a false imprisonment the detention must be wholly unlawful . . . ." *McGann* v. *Allen,* 105 Conn. 177, 188, 134 A. 810 (1926). To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly.

"An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a pur-

pose other than that of bringing an offender to justice." *McHale* v. *W.B.S. Corporation,* 187 Conn. 444, 447, 446 A.2d 815 (1982).

The distinction between malicious prosecution and false imprisonment has been described in the following manner. "Malicious prosecution is the groundless institution of criminal proceedings against the plaintiff. False imprisonment fell within the action of trespass, as a direct interference with the plaintiff's person, while malicious prosecution was regarded as more indirect, and the remedy for it was an action on the case. The distinction between the two lies in the existence of valid legal authority for the restraint imposed. If the defendant complies with the formal requirements of the law, as by swearing out a valid warrant, so that the arrest of the plaintiff is legally authorized, the court and its officers are not his agents to make the arrest, and their acts are those of the law and the state, and not to be imputed to him. He is therefore liable, if at all, only for a misuse of legal process to effect a valid arrest for an improper purpose. The action must be for malicious prosecution, upon proof of malice and want of probable cause, as well as termination of the proceeding in favor of the plaintiff. The weight of modern authority is that where the defendant has attempted to comply with legal requirements, and has failed to do so through no fault of his own, false imprisonment will not lie, and the remedy is malicious prosecution. The policy is to give the defendant the privilege of making reasonable efforts to bring his case properly before the court, without liability unless his ultimate purpose is an improper one." W. Prosser, Torts (4th Ed.) § 11.

Because malicious prosecution and false arrest or imprisonment are separate and distinct causes of action, each must be pleaded by separate counts in a

complaint. Practice Book § 138;[9] see *Burns* v. *Koellmer,* 11 Conn. App. 375, 387–88, 527 A.2d 1210 (1987); *Gach* v. *Franolich,* 10 Conn. App. 677, 681–82, 525 A.2d 525 (1987). The plaintiff's substitute complaint contains four counts. The second, third and fourth counts incorporate the first count and allege in each that the three defendants conspired with the other defendants to cause maliciously his false arrest and prosecution. The plaintiff's complaint alleged that he was arrested by the Middletown police as a result of the defendants' statements and filing of a complaint against him.[10] Because the law is clear that a cause of action for false imprisonment cannot be sustained where the plaintiff's arrest results from the defendants' institution of and compliance with proper legal authority, the allegations of the plaintiff's complaint are insufficient to set up a cause of action for false imprisonment. We conclude, therefore, that the trial court properly denied the plaintiff's request for an instruction on false arrest, and correctly concluded that the plaintiff's complaint alleged a claim of malicious prosecution.

[9] Practice Book § 138 provides: "——SEPARATE COUNTS

"Where separate and distinct causes of action, as distinguished from separate and distinct claims for relief founded on the same cause of action or transaction, are joined, the statement of the second shall be prefaced by the words Second Count, and so on for the others; and the several paragraphs of each count shall be numbered separately beginning in each count with the number one."

[10] The following portions of the plaintiff's complaint are relevant to this claim: "8. As a result of the aforementioned acts by the defendants the Middletown police were summoned to the plaintiff's residence whereupon each and all of the defendants requested to the police that the plaintiff be arrested and each and all of the defendants complained and made statements to the police alleging that the plaintiff had assaulted defendant Billian.

"9. As a direct result of the aforementioned complaints and statements of each and all of the defendants, the police handcuffed the plaintiff's wrists behind his back in the full view and gaze of plaintiff's minor child and placed the plaintiff under arrest at approximately 1:00 p.m. to 1:30 p.m., April 14, 1984, and thereafter removed the plaintiff from his home to the police station and booked and charged the plaintiff with the crime of assault in the third degree in violation of Connecticut General Statutes 53a-61."

We now turn to that portion of the plaintiff's claim maintaining that the charge on malicious prosecution was misleading. We find no error.

"In determining whether the court erred in its charge to the jury, the charge must be read as a whole and the instructions claimed to be in error read in that context." *Giglio* v. *Hamilton Heights, Inc.,* 1 Conn. App. 165, 167, 469 A.2d 416 (1984), citing *Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 704, 462 A.2d 376 (1983). The adequacy of the instructions must be determined in light of their overall impact on the jury. *State* v. *Lenczyk,* 1 Conn. App. 270, 271, 470 A.2d 1240 (1984). The charge must be examined to determine whether it fairly presents a case to the jury. *Ubysz* v. *DiPietro,* 185 Conn. 47, 57, 440 A.2d 830 (1981).

We have reviewed the court's instructions to the jury and conclude that it is not reasonably possible that the jurors were misled. The plaintiff was entitled to, and received, an instruction adequately suited to his claim of malicious prosecution as supported by the evidence he presented. See *Grecki* v. *New Britain,* 174 Conn. 200, 203, 384 A.2d 372 (1978); *Mei* v. *Alterman Transport Lines, Inc.* 159 Conn. 307, 313, 268 A.2d 639 (1970).

V

The plaintiff's remaining claims challenge two evidentiary rulings by the court concerning the admissibility of certain evidence to establish damages. Because we have found no error on the plaintiff's other claims and the jury returned a verdict for the defendants, thereby finding no liability, it is unnecessary for us to review the plaintiff's claims of error as to damages.

There is no error.

In this opinion the other judges concurred.