[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Shondue Hannah, filed this civil action by complaint dated December 20, 1993. The complaint contains four separate counts. The First Count alleges a violation of her civil rights pursuant to 42 U.S.C. § 1983. The Second Count alleges false arrest and imprisonment. The Third Count alleges reckless endangerment. The Fourth Count alleges intentional and negligent infliction of emotional distress upon the plaintiff.
Upon review of the pleadings, testimony and exhibits the court finds the following facts:
On September 7, 1993, at approximately 7:00 a.m. the plaintiff appeared at the Bridgeport Police Station to follow up on a report; made the previous day of a hit and run accident in which she had been involved. When she identified herself to the officer at the front desk she was advised that there was an outstanding warrant for her arrest which originated in the state of Maryland. Plaintiff was placed in custody, handcuffed and CT Page 4267 taken to the booking area within the Bridgeport Police Station. While the plaintiff was in the booking area, information, in the form of a fax, was received from Maryland setting forth the following: Name: Hannah, Shondue Hyella; Sex/F; race: B; POB: CT; DOB: 9-13-71; Hgt: 4'11"; WGT: 110; EYE: Bro; HAI: Blk; SOC: 046767837; Residence: 594 Laurel Avenue, Bridgeport, Conn.
All of the above information, with the exception of height and weight, was correct.
The plaintiff asserted her innocence, claiming that she has never been in the state of Maryland. She further told officer Louise Karoli and Sergeant John Carraro that she had lost her driver's license and other identification.
At the commencement of the trial, plaintiff's attorney moved to have Chief of Police Thomas Sweeney turn over the documents which were listed on the previously served Subpoena Duces Tecum.
Counsel for the defendants, City of Bridgeport and Chief Thomas Sweeney, moved to quash the subpoena as to items 11, 12 
13.
Counsel for defendant, Louise Karoli, moved to quash the subpoena to the extent that the subpoena requests the production of her client's personnel file. Counsel for defendant, John Carraro, did the same as to his client's personnel file.
The court granted the motion to quash the subpoena as to Item 12, the personnel files of the defendants to this action and Item 13, the Internal Affairs files for each defendant to this action. After a viewing in camera, and ordering the removal of statements made by police officers, the court permitted Chief Sweeney to turn over Item 11, the Internal Affairs file pertaining to any civilian complaint made by the plaintiff after the September 7, 1993 arrest.
The Internal Affairs file provided the court with the benefit of a video tape of the "booking" of the plaintiff.
There was considerable discrepancy between the facts set forth in the complaint, plaintiff's testimony at depositions and plaintiff's testimony in court after viewing the tapes. In a Citizens complaint, which plaintiff filed with the Bridgeport Police on November 17, 1993, plaintiff states "As a result of being arrested I lost my job for not calling in to work." A CT Page 4268 representative of her employer testified that she quit her job at Food for Thought to become a nanny.
The tapes show the plaintiff, without handcuffs, standing at the booking desk at approximately 7:23 a.m. on September 7, 1993. She is conversing with Officer Louise Karoli who permits her to make at least four telephone calls. She had first claimed that she was only allowed to make one call.
Officer Karoli is shown on the tapes offering the plaintiff some comfort and advice upon learning that the plaintiff had, the evening before, received death threats from her boyfriend.
In violation of departmental regulations by Louise Karoli and John Carraro, plaintiff was permitted to see her mother in the booking area and plaintiff gave her personal belongings to her mother. Plaintiff has previously testified in depositions introduced at trial, that her mother was not allowed in the booking area.
During the booking process, which was completed at approximately 8:30 a.m., the fax discussed supra was received by John Carraro. While the plaintiff was in custody of the Bridgeport Police there was a concern raised because of the height and weight discrepancy contained in the fax. John Carraro testified that he placed a call to Maryland seeking the photographs and fingerprints of the person arrested there.
The tape shows the plaintiff leaving the Bridgeport Police Department to go to Superior Court at approximately 9:35 a.m.
The information from Maryland, a photograph, descriptions and finger print classification of the person wanted was faxed from Maryland at 10:35 a.m. and received by John Carraro a short time thereafter.
Officer Vernon Woods testified that he was the liaison officer between the Police Department and Superior Court. He recalls receiving a picture of the Maryland suspect and was instructed by someone, who he was unable to identify, from the Bridgeport Police Department to go see the plaintiff, who was in the hallway in the holding area at the Courthouse. The plaintiff told Officer Woods that the photograph was that of plaintiff's former roommate, Mikelyn Stewart. CT Page 4269
Some time during the morning of September 7, 1993, Officer Woods delivered a note to one of the prosecutors. The note set forth his conclusion that after visiting with plaintiff and comparing the photograph received from Maryland, the Plaintiff, Shondue Hannah, was not the fugitive from Maryland.
The evidence indicates that the prosecutor's office had the necessary information to release the plaintiff in mid day on September 7, 1993. The plaintiff, however, did not appear before a judge of the Superior Court until approximately 6 p.m., at which time she was released.
The plaintiff testified that she went to the Bridgeport Police Department at approximately 10:00 a.m. on September 8, 1993 to file a citizen complaint. She said that she handed the complaint to an unidentified officer who took it to an individual who plaintiff said he called "Chief". The unidentified officer, according to the plaintiff, came back and told plaintiff that it could not be accepted because it was too late to file a complaint. The plaintiff did not produce a copy of this complaint, nor was she able to identify the man she claimed was called "Chief".
Chief Thomas Sweeney testified that he has no authority to deny a civilian complaint in accordance with the Barros Decree and the procedures adopted by the Police Commission. Chief Sweeney further testified that he was on vacation on September 7, 1993 and that on September 8, 1993 at 10:00 a.m. he was in a Gang Task Force meeting at the University of Bridgeport.
The plaintiff did file a civilian complaint on November 17, 1993 and a copy was placed in evidence. Lt. Robert M. Studevant testified that he returned the complaint to the plaintiff by letter dated December 1, 1993.
Lt. Studevant explained in the letter to plaintiff and so testified that the "Barros Consent Decree contains procedures and, guidelines. . . . one of which is that the complaint be filed, absent any particular extenuating circumstances, within sixty (60) days of . . . the date of the incident. . . ."
The first count of plaintiff's complaint alleges a violation of her civil rights pursuant to 42 U.S.C. § 1983 and violation of the First, Fourth, Eighth, Tenth and Fourteenth Amendments to the Constitution of the United States and similar CT Page 4270 provision of the Constitution of the State of Connecticut.
The court finds that there was not a scintilla of evidence, that plaintiff's civil rights were violated. It will suffice to say that plaintiff testified that none of the defendants said or did anything to indicate racial prejudice; nor was there evidence that plaintiff's civil rights were violated. As shown on the tapes, the plaintiff was treated with courtesy by the Bridgeport Police.
The second count alleges a false arrest and imprisonment. The plaintiff argues that the arrest was not supported by probable cause. The undisputed fact was that the police had a warrant and all of the information was accurate, with the exception of the height and weight of the fugitive. In the case of a false imprisonment, the detention must be wholly unlawful either because the process is void on its face or the detention is without process. McGann v. Allen, 105 Conn. 177, 188. Also cited in La Sacco v. Young, 20 Conn. App. 6.
The third count alleges reckless endangerment setting forth that "the Defendants did, with reckless disregard for the life and safety of the Plaintiff, endangered Plaintiff intentionally."
The fourth count alleges intentional and negligent infliction of emotional distress of the plaintiff.
Intentional infliction of Emotion Distress is proved by a showing that:
 (1) the actor intended to inflict emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.
Petyan v. Ellis, 200 Conn. 243.
The plaintiff offered no testimony to indicate that any defendant acted in a manner to harm her intentionally or negligently. There was no evidence that the conduct of the CT Page 4271 defendants was extreme and outrageous. There was no evidence of severe emotional distress.
The evidence would indicate to the court that defendant, John Carraro made an error of judgment. He should have kept the plaintiff in the police station holding cell pending further information from Maryland.
This court does not find from the evidence that any defendant intentionally intended to inflict emotional distress, nor was the conduct of any defendants extreme and outrageous. The police had a warrant containing sufficient information to justify the detention of the plaintiff. Further, the Bridgeport Police advised the prosecutor's office in a timely manner that the plaintiff was not the party sought under the warrant.
During trial the plaintiff withdrew the case as against Defendant, Thomas O'Leary. At the completion of trial, the court granted Defendant Louise Karoli's Motion for Judgment of Dismissal.
The court now grants defendants Thomas Sweeney, City of Bridgeport and Defendant John Carraro's Motion to Dismiss.
The plaintiff's claim as against other unknown officials of the Police Department of the City of Bridgeport is also dismissed.
Dated at Bridgeport, Connecticut, this 21th day of April 1995.
RICHARD J. TOBIN, JUDGE