[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Jozsef Bogdan, brings this action against the defendants, Coca Cola Bottling Company of New York, David Dubiel, Security Forces, Inc., and Leonard Macisco, claiming malicious prosecution. The malicious prosecution claim is based on the plaintiff's arrest by Fairfield, Connecticut Police on a charge of reckless endangerment pursuant to Connecticut General Statutes § 53a-63 on November 20, 1992. At the outset of the hearing the plaintiff withdrew his claim against Coca Cola Bottling Company of New York and David Dubiel.
This court finds that there was insufficient evidence to support the malicious prosecution claim.
In their briefs, both parties set forth the elements of the malicious prosecution cause of action as follows: (1) the CT Page 7703 defendant initiated or procured criminal proceedings against the plaintiff; (2) the criminal proceedings terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice primarily for a purpose other than bringing a defendant to justice. The case is LO Saccov. Young, 20 Conn. App. 6, 19 (1989).
The plaintiff is a Hungarian native who at the time of the incident was a part-time security guard employed by Security Forces, Inc. There was some question, not germane to this decision, as to whether the plaintiff was properly licensed as an armed security guard at the time of the incident.
The defendant, Leonard Macisco, at the time of the incident was a supervisor employed as a security guard by Security Forces, Inc.
David Martinez was also a security guard employed by Security Forces, Inc. and he was scheduled to relieve Leonard Macisco at the Coca Cola Bottling Plant on November 20, 1992.
There had been some confusion as to whether Jozsef Bogdan had been scheduled to work on that evening; however, he did report to the security guard house at the Coca Cola Plant at approximately 8 p. m. on the evening of November 20, 1992. The plaintiff's recollection of the events that occurred on that evening totally contradict the testimony of Messrs. Macisco and Martinez.
Plaintiff testified that he was alone at the guard house when he either heard or saw people attempting to climb the fence on that section of the property that abuts the railroad tracks. He further testified that one of the individuals had scaled the fence and was rushing towards him waving a club in his hand. When the intruder was approximately three feet from the plaintiff the plaintiff fired a warning shot into the air. He then claims that Messrs. Macisco, Martinez and Dubiel came rushing out of the building. Mr. Dubiel is a supervisory employee of Coca Cola.
The witnesses for the defendants, Leonard Macisco and David Martinez testified that they were in the guard house talking when the plaintiff arrived for work. Messrs. Macisco and Martinez testified that shortly thereafter the plaintiff ran off towards the remote corner of the facility shouting "Come on, Come on". Macisco and Martinez then moved towards where plaintiff was running and suddenly heard the one shot gunfire. They looked out CT Page 7704 on the other side of the fence and saw some youths fleeing across the railroad tracks into the woods.
Plaintiff testified that David Dubiel ordered plaintiff to shoot the intruder(s).
Defendants' Exhibit Fourteen is an Incident Report filed by Leonard J. Macisco on November 21, 1992. The Incident Report states that "Joe Bogdan, Dave Martinez and I ran to the back fence in different directions. Joe and I got there at the same time and he shot one round into the air. The intruders was not on the property at the time they were running to and down the train tracks."
The court finds that the testimony of Messrs. Martinez and Macisco is consistent with the Incident Report, filed the day after the incident, on November 21, 1992.
It appeared from the plaintiff's testimony that he knew that the firing of a warning shot violated gun permit regulations and he abided by these regulations by contacting the Fairfield Police Department.
The plaintiff then waited near the guard house to await the arrival of a Fairfield Police Officer. Shortly after the incident, Officer Edward Erazmus appeared and had a brief discussion with the plaintiff before entering the building where they were met by Mr. Dubiel.
Officer Edward Erazmus did not testify but his deposition was entered as defendant's Exhibit Thirteen.
Officer Erazmus testified in his deposition that he went into the building and was met by Mr. Dubiel who told the officer that one of the Coca-Cola employees, Juan Garcia, was moving a truck very close to where the plaintiff fired the shot into the air.
Officer Erazmus interviewed Juan Garcia and Juan Garcia signed a voluntary statement which is plaintiff's Exhibit I.
In Juan Garcia's statement, he stated that he was approximately forty feet from the plaintiff when plaintiff fired the weapon into the air.
Officer Erazmus also testified that plaintiff never told him CT Page 7705 that the plaintiff's life had been threatened nor did the plaintiff ever discuss or take Officer Erazmus to see the threatening pipe which apparently was dropped as one of the intruders, according to the plaintiff, climbed back over the fence.
There was no credible evidence for this court to conclude that Leonard Macisco or Security Forces, Inc., or any of its employees, initiated or procured criminal proceedings against the plaintiff.
The testimony of Officer Edward Erazmus was that he and he alone decided to arrest the plaintiff and charge him with reckless endangerment. He further testified that he could have charged the plaintiff with a lesser charge of illegal discharge of a firearm within city limits. According to Officer Erazmus, the more serious charge was filed because of the danger to Juan Garcia.
In fact, Officer Erazmus testified in his deposition that he had decided to charge the plaintiff initially with the crime of illegal discharge of a firearm.
The complaint also alleges that the plaintiff was wrongfully discharged from his part-time duties as a security guard with Security Forces, Inc.
Mr. Robert N. Clarke, a vice-president of Security Forces, Inc., testified that he was the one who hired the plaintiff and was in charge of his training as a security guard. Mr. Clarke also assisted the plaintiff in applying for a security officer's firearms permit.
Mr. Clarke testified that the plaintiff was hired as a part-time security guard. At the time of his initial employment, the plaintiff had a telephone; however, in the weeks preceding the incident he did not have a telephone. Messages, setting forth his work schedule, had to be left with a clerk at a grocery store nearby the residence of the plaintiff. On November 20, 1992, Security Forces, Inc. was unable to confirm that the plaintiff had received the message to work that evening and as a result, David Martinez was assigned to work the 8:00 p. m. to 12:00 a.m. shift.
The evidence would indicate that the firing of the weapon CT Page 7706 into the air, coupled with the fact that Security Forces, Inc. was unable to communicate with the plaintiff for work assignments, caused Mr. Clarke to terminate the plaintiff's employment.
The court finds that Mr. Clarke acted with probable cause and without malice in terminating the employment of the plaintiff.
Accordingly, the court finds judgment in favor of the defendant.
Dated at Bridgeport, this 13th Day of July, 1995.
RICHARD J. TOBIN, JUDGE