[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 12635
The plaintiff, Olivia E. Pittman (O. Pittman), a minor, filed this action by the plaintiff, Harold J. Pittman (H. Pittman), her next friend and father, on August 24, 1994. The two-count complaint alleges the following facts. The defendant, Patricia Berkovitz (Berkovitz) was the owner and keeper of a Great Dane dog. On August 24, 1992, O. Pittman, while on the defendant's premises, was bitten by the dog and suffered injuries, some of which are permanent in nature.
Count one of the complaint alleges that Berkovitz is liable for the dog bite under General Statutes § 22-357.[1] Count two incorporates the allegations of count one and alleges that H. Pittman incurred expenses for the medical treatment of his minor child as a result of the bite and that he may be forced to incur additional such expenses in the future.
On April 17, 1995, the defendant filed a revised answer and special defense.[2] The special defense alleged that, at the time of the injury, O. Pittman was present on the premises without the permission or knowledge of Berkovitz and, as such, was a trespasser under General Statutes § 22-357.
On April 24, 1995, the plaintiffs moved to strike the special defense on the ground that it did not state a legally sufficient defense to the plaintiffs' cause of action. Thereafter, on June 9, 1995, Berkovitz filed an amended answer and revised first special defense which, according to Berkovitz, was filed "[p]ursuant to plaintiff's Motion to Strike dated April 20, 1995. . . ." Berkovitz did not file, however, a request for leave to file the amended answer nor did she file a memorandum in response to the plaintiffs' motion to strike.
On June 20, 1995, the plaintiffs filed a second motion to strike. The plaintiffs move to strike the amended answer and revised first special defense on two grounds. First, the plaintiffs argue that Berkovitz failed to follow the practice book procedure for the amendment of a pleading, and therefore the revised first special defense should be stricken.[3] Secondly, the plaintiffs argue that Berkovitz did not plead facts which constitute a legally sufficient defense to the plaintiffs' cause of action.
On July 6, 1995, Berkovitz filed a memorandum in opposition to CT Page 12636 the motion to strike. In response to the first argument raised by the plaintiffs, Berkovitz argues that after reviewing the law cited in the plaintiffs' April 24, 1995 motion to strike, "the defendant decided that the First Special Defense . . . was legally insufficient. No court ruling was necessary as the defendant was in agreement with the plaintiffs' . . . motion." Defendant's Opposition to Motion to Strike, July 6, 1995. With respect to the second argument raised by the plaintiffs, Berkovitz argues that the conduct alleged in the first special defense is legally sufficient to fall within the statutory exception for trespass under § 22-357.
The plaintiffs filed a supplemental memorandum of law on July 7, 1995.
A motion to strike may be used to contest the "legal sufficiency of any answer to any complaint, counterclaim or cross-complaint, or any part of that answer including any special defense contained therein. . . ." Practice Book § 152. "A motion to strike is the proper manner in which to raise the issue of the legal sufficiency of a special defense to a cause of action." Passini v.Decker, 39 Conn. Sup. 20, 21, 467 A.2d 442 (Super.Ct. 1983). No responsive pleading to a motion to strike is required by the opposing party. Greater Hartford CATV v. Boulay, 7 Conn. L. Trib., No. 9, p. 17, 18 (Super.Ct., March 2, 1981) (O'Connell, J.).
As set out in the procedural history of this case, there are two motions to strike presently before the court. The court grants the plaintiffs' April 24, 1995, motion to strike the special defense as the defendant has conceded to its legal insufficiency. See Defendant's Opposition to Motion to Strike, July 6, 1995, stating that "[a]fter reviewing the law cited within the plaintiffs' April 20 Motion to Strike, the defendant decided that the First Special Defense of April 12, 1995 was legally insufficient. No court ruling was necessary as the defendant was in agreement with the plaintiff's April 20 Motion to Strike. Consequently, the defendant filed her Amended/Revised First Special Defense . . . dated June 7, 1995."; see also Amended Answer, June 9, 1995, stating that "[p]ursuant to plaintiff's Motion to Strike dated April 20, 1995, the defendant hereby files a Revised Answer and Special Defense which complies with the case law cited within plaintiffs' Motion to Strike."
The court must next address the effect of Berkovitz's failure to file a request for leave to file the amended answer and revised special defense as required under Practice Book § 176.[4] The CT Page 12637 plaintiffs raise Berkovitz's failure to file a request to amend as a ground for the motion to strike.[5] The motion to strike is an improper procedural device by which to raise an objection to a party's amended pleading on the ground that the party failed to file a request for leave to file the amended pleading. The plaintiffs should have filed an objection to the filing to the amended answer. Nonetheless, notwithstanding their objection to the revised special defense on procedural grounds, the plaintiffs argue the legal insufficiency of the revised special defense in their memorandum in support of their motion to strike.
The court has wide discretion in granting or denying amendments before, during and even after trial. Saphir v.Neustadt, 177 Conn. 191, 206, 413 A.2d 843 (1979). "Factors to be considered in passing on a motion to amend are the length of delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment." Lo Sacco v. Young, 20 Conn. App. 6,17, 564 A.2d 610 (1989).
The defendant's failure to file a request for leave to file the amended answer is outweighed by countervailing considerations. No unfairness inures to the plaintiffs. The plaintiffs were aware of Berkovitz's intent to raise the statutory exception as a special defense as early as March 17, 1995, when the defendant filed the original answer and special defense. The defendant's revisions to the special defense clarify and expand what has already been alleged rather than effect a change in the defense alleged. Secondly, permitting the amended answer will not work a delay in the progress of the case, rather it will prevent delays which would be caused by additional pleading.[6] Thirdly, the plaintiffs have presented to the court their arguments regarding the legal sufficiency of the special defense, thereby expressing their desire for the court to reach the merits of their argument. Thus, the court, in exercising its discretion, does recognize the defendant's amended answer and revised first special defense as the operative pleading in this action.
The first special defense alleges the following facts. On the date of incident, H. Pittman was painting the interior of Berkovitz's home pursuant to a contract between the parties. H. Pittman had been warned not to allow anyone to enter the defendant's home while the defendant was not present. O. Pittman entered the defendant's home at the direction of her parents and without the defendant's knowledge, consent or permission. The defendant was not at home at the time of the incident. O. Pittman CT Page 12638 entered the living room area of the home, where the dog usually slept.
The first special defense alleges that O. Pittman's trespass into the living room was an entry into the dog's "territorial sanctuary, " constituting an "act of torment" which caused the dog to defend the premises of its owner. Defendant's Amended Answer, June 9, 1995, pp. 2-4.
It appears from the foregoing that the defendant is raising as a special defense the statutory exceptions to liability under § 22-357
for trespass and acts of torment directed toward a dog.
The plaintiffs argue that the special defense is legally insufficient. They argue that the statute only bars liability for trespasses and torts which a dog, with its characteristic loyalty, would instinctively defend and protect against. The plaintiffs argue that the phrase "trespass or other tort" in the statute requires more than a mere entry. They claim that the intent of the statute is to bar recovery only where the plaintiff was committing or intending to commit some injurious act, such as would cause a dog to instinctively defend the premises. The plaintiffs assert that no such facts are alleged.[7]
Berkovitz contends that the factual allegations are legally sufficient to state the defense of "trespass or other tort" under § 22-357. Berkovitz agrees with the plaintiffs that the statutory phrase has been interpreted to mean torts committed on the property of the owner, which property a dog, with its characteristic loyalty, would instinctively defend and protect. Where the parties disagree, however, is on the issue of whether O. Pittman's conduct was a trespass to the property of the owner which would cause a dog to so react. As noted earlier, the plaintiffs contend that the entry alleged is legally insufficient. The defendant contends that because O. Pittman was inside the house, her conduct constituted the type of entry which would arouse a dog to a defensive posture.[8]
Thus, Berkovitz claims that O. Pittman's conduct was within the purview of the statutory exception. Berkovitz argues that the question of whether the conduct of O. Pittman constituted acts which would naturally incite a dog is a question for the trier of fact.
"General Statutes § 22-357 imposes strict liability on the owner or keeper of any dog that does damage to the body or property of any person." Falby v. Zarembski, 221 Conn. 14, 19, 602 A.2d 1
CT Page 12639 (1992). "There are only two situations under the statute in which a dog owner can escape liability for injuries caused by his dog."Wroniak v. Ayala, 14 Conn. L. Rptr. 328 (June 13, 1995) (Sheldon, J.). "The first is when the person injured is committing a trespass or another tort. The second is when the injured party is guilty of `teasing or abusing the dog.'" Id., quoting Hanson v.Carroll, 133 Conn. 505, 52 A.2d 700 (1947).
"The phrase `trespass or other tort,' as used in . . . [the] statute, has been interpreted to refer only to (a) torts committed upon the person or property of the owner or keeper or his family, and other torts of a like character, against which the dog, with its characteristic loyalty, would instinctively take defensive and protective action, and (b) those torts, committed upon the dog, which would be likely to excite it to the use of its natural weapons of defense." Kowal v. Archibald, 148 Conn. 125, 127,167 A.2d 859 (1961).
In Hanson v. Carroll, supra, 133 Conn. 505, the court addressed the issue of "whether mere entry upon land is such a trespass as is contemplated by the statute." Id., 508. In Hanson,
the plaintiff, who heard that the defendant had fertilizer for sale, entered the defendant's yard for the purpose of making a purchase. Id., 506-07. When the plaintiff walked around the westerly side of the house toward the kitchen door, he was attacked by one of two watchdogs kept on the premises by the defendant for the protection of the property. Id. The defendant claimed that the plaintiff was a trespasser within the meaning of the statute. Id., 507.
Acknowledging that at common law every unwarrantable entry by one upon the land of another was a trespass, the court stated that in Connecticut "entry on another's premises is not conclusive of trespass but may be justified, and that justification is not limited to proof of proprietary right of entry or express consent of one in possession." Id., 508-10. The court held that "[t]he expression `trespass or other tort' in the statute suggests more than a mere entry and the plain intent of the statute is to bar recovery where the plaintiff was committing or intending to commit some injurious act." Id., 509-10. Thus, the court held that "the act of the plaintiff was not such a trespass as was within the intent if the statutes. . . ." Id., 511.
In Verrilli v. Damilowski, 140 Conn. 358, 100 A.2d 462 (1953), the court stated that "the word `trespass' as employed in the CT Page 12640 exception refers to something more serious that the mere technical trespass of entering upon the land of another where neither intent to damage nor damage in fact is involved, and where no acts are committed which would naturally arouse an ordinary dog to action to protect its owner's property or family." Id., 363.
It is noted preliminarily that "[a] motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix MedicalSystems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25
(1992). The defendant has not alleged a type of trespass which falls within the statutory exception. The first special defense does not allege that O. Pittman was committing or intending to commit an injurious act nor does it allege facts in support thereof. Thus, there are no facts to support an allegation that the trespass by O. Pittman was of the type that would call for protection or defensive action by a dog. Accordingly, the first special defense, as pled, is legally insufficient and the plaintiffs' motion to strike is granted.
Howard F. Zoarski, Judge