**Nicholas RUSSO, Plaintiff**

v.

**CITY OF HARTFORD,
et al. Defendants.**

Nos. CIV.A. 397CV2380(JCH), CIV.A. 300CV2382(JCH), CIV.A. 300CV1794(JCH).

United States District Court,
D. Connecticut.

Feb. 5, 2002.

David K. Jaffe, Eisenberg, Anderson, Michalik & Lynch, New Britain, CT, James S. Brewer, Erin I. O'Neil–Baker, West Hartford, CT, John T. Forrest, Law Offices of John T. Forrest, LLC, Hartford, CT, for Plaintiff.

Helen Apostolidis, Corporation Counsel's Office, Hartford, CT, Lind L. Yoder, Charles L. Howard, Gregg Peter Goumas, Kara L. Van Ausdall, Shipman & Goodwin, Joseph W. McQuade, Kainen, Escalera & McHale, PC, Stephen Richard Sarnoski, Attorney General's Office, Lynn D. Wittenbrink, Attorney General's Office, Peregrine Alban Zinn–Rowthorn, Attorney General's Office, Frank J. Szilagyi, Silvester, Daly & Delaney, Hartford, CT, for Defendants.

James A. Killen, Office of the Chief States's Attorney, Rocky Hills, CT, for Movant.

## RULING ON MOTIONS TO DISMISS [DKT. NOS. 132, 138, 140, 142, 145, 147, 176]

HALL, District Judge.

### I. INTRODUCTION

This litigation involves federal civil rights actions brought pursuant to 42 U.S.C. § 1983 by the plaintiff, Hartford Police Detective Nicholas Russo ("Russo"), against state criminal prosecutors and inspectors, Hartford police officers and supervisors, the Hartford Police Union and union officers, and the City of Hartford. Russo alleges several federal constitutional and state law violations arising out of events surrounding his arrest on December 16, 1997 and his suspension from his police duties. Russo filed three related lawsuits, *Russo v. City of Hartford, et al.,* 3:97cv2380 (JCH); *Russo v. Bailey, et al.,* 3:00cv1794 (JCH); and *Russo v. Marquis, et al.,* 3:00cv2382 (JCH), which have been consolidated for purposes of discovery.[1] Pending before the court are motions to

---

1. Russo also filed a proposed class action, *Russo v. CVS Pharmacies, Inc., et al.,* 3:00cv1852 (JBA), stemming from related facts, but naming different defendants and raising different issues. That action has not been consolidated.

dismiss filed by the defendants in each of the consolidated actions.

## II. FACTUAL BACKGROUND [2]

Russo has been employed as a police officer for the City of Hartford Police Department since 1981. For more than six years, Russo served as a Detective with CAPers, the Crimes Against Persons division of the Hartford Police Department. In June 1995, Russo was also assigned to the Federal Violent Crimes Unit in Hartford. He served as a detective in both capacities until his arrest on December 16, 1997.

On or about January 10, 1997, David Kenary ("Kenary"), a lieutenant assigned to the CAPers division, ordered Russo to bring a doctor's note to explain his absence from work. Russo brought a note from his physician stating that he had been absent from work for three days because he was being treated for influenza. Lieutenant Kenary and Charles Lilley ("Lilley"), a sergeant assigned to the CAPers division, also contacted Russo's physician and received confidential medical information. In addition, on January 10, Russo was ordered to submit to a drug test, the results of which were negative.

On or about January 15, 1997, Russo's recorded phone message calling in sick was played at a meeting of union officials and police supervisors, including Chief of the Hartford Police Department, Joseph Croughwell ("Croughwell"); Jeffrey Flaherty ("Flaherty"), a captain in the Hartford Police Department; and Lieutenant Kenary. At the meeting, Russo's supervisors and the union officials discussed Russo's alleged drug or alcohol abuse. The individuals agreed that referral to the Employee Assistance Program ("EAP"), pursuant to the Collective Bargaining Agree-

ment and the policy and past practice of the Hartford Police Department, would be appropriate, but no referral was ever made.

In the spring of 1997, while Russo was assigned to the Federal Gang Task Force, Daryl Roberts ("Roberts"), a sergeant with the CAPers division, Lieutenant Kenary, and Sergeant Lilley denied Russo access to the CAPers division after having the locks changed and refusing to provide Russo a key. Further, they ordered Russo to report to them each morning with a daily schedule. On several occasions, they also ordered him to report at the end of the day with a signed memo from the U.S. Attorney's Office detailing what Russo had done that day. No other officers supervised by those individuals were treated in this manner. Moreover, while Russo was working with the Federal Violent Crimes Unit, Russo's chain of command—Chief Croughwell, Captain Flaherty, Lieutenant Kenary, Sergeant Roberts, and Sergeant Lilley—harassed him generally by locking him out of his office at the CAPers division, moving his desk, and searching and removing the contents of his desk.

Also during the spring of 1997, anonymous allegations were made that Russo was suicidal. As a result, Chief Croughwell ordered Russo to submit a note from a therapist to verify he was fit to work. On or about March 9, 1997, Russo was required by the City of Hartford, Chief Croughwell, and Captain Flaherty, to take another drug test.

On June 15, 1997, a murder took place in the City of Hartford. Both the Hartford Police Department and the Federal Violent Crimes Unit investigated the murder. Russo investigated the murder as a member of the Federal Gang Task Force and

---

**2.** The following facts are based on allegations made in the complaints. The facts have been combined to provide a complete narrative, but not all facts stated herein are incorporated or alleged in each count of all the complaints.

helped effectuate the arrest of a suspect. Russo's involvement in the arrest and his affiliation with the federal authorities caused tension within the CAPers division of the Hartford Police Department. The Hartford Police Department released a different suspect that had been arrested for the murder, and, in news media, Russo strongly maintained that the Hartford Police Department had no probable cause to arrest their suspect.

On or about September 9, 1997, Lieutenant Kenary contacted the Drug Enforcement Administration ("DEA") to initiate a criminal investigation of Russo's physician, as a ruse to investigate Russo. State's Attorneys James Thomas ("Thomas"), Herbert Carlson, Jr. ("Carlson"), and Joan Alexander ("Alexander") also initiated a criminal investigation of Russo's physician in September 1997. A joint investigation team was formed that included Chief State's Attorney John Bailey ("Bailey"); State's Attorneys Thomas, Carlson, and Alexander; Lawrence Skinner ("Skinner"), an Inspector in the Office of the Chief State's Attorney; Chief Croughwell; Captain Flaherty; and Lieutenant Kenary.

In October 1997, the United States Attorney's Office ordered Russo to work on a police corruption probe involving, among other things, the theft of drugs, money, and weapons by Hartford Police Department officers and supervisors. On or about October 13, 1997, Russo confidentially told Stephen Kumnick ("Kumnick"), an Inspector in the Office of the Chief State's Attorney, about the corruption probe. On or about October 30, 1997, State Inspector Kumnick notified James Rovella ("Rovella"), a detective assigned to the CAPers division of the Hartford Police Department. Detective Rovella notified two possible targets of the probe, Sergeant Christopher Lyons ("Lyons") and Detective Robert Lawlor ("Lawlor"). Sergeant Lyons and Detective Lawlor approached Chief Croughwell about the probe, and Chief Croughwell called Russo, in Lyons and Lawlor's presence, to convey threats by Lyons and Lawlor. During that conversation, Lyons and Lawlor also personally threatened Russo. Chief State's Attorney Bailey notified Chief Croughwell of the probe in an October 31, 1997 memorandum detailing Russo's conversation with State Inspector Kumnick.

During October and November, at the direction of Chief State's Attorney Bailey and State's Attorneys Thomas, Carlson, and Alexander in investigating Russo's physician, Joseph Hammick ("Hammick"), an Inspector in the Office of the Chief State's Attorney, State Inspector Skinner, and Lieutenant Kenary illegally seized Russo's confidential medical records from Russo's physician, illegally searched and seized Russo's prescription records from numerous pharmacies, improperly focused on Russo as the target of the investigation, and provided Russo's physician a cooperation agreement to fabricate information in order to implicate Russo in criminal charges in return for no prosecution on the valid charges against the physician. According to State's Attorney Thomas, the goal of the investigation was to discredit Russo, which would in turn discredit the federal investigation, arrest, and conviction of the suspect from the June 15 murder.

In response to the federal corruption probe, Chief Croughwell conspired with Captain Flaherty on November 4, 1997 to detain Russo under the pretext of a drug evaluation. Captain Flaherty and two other police sergeants confronted Russo at the United States Attorney's office in New Haven, Connecticut. Captain Flaherty stated that Chief Croughwell ordered that Russo be taken to Hartford to submit immediately to a drug test in Bloomfield, Connecticut. Captain Flaherty took Russo's firearm and escorted Russo to the

back seat of an unmarked police vehicle. Russo was taken to the Medtox Laboratories facility for a drug test. While at the facility, Flaherty also interrogated Russo. During the return trip to Hartford, Flaherty told Russo that Chief Croughwell had ordered that Flaherty not return Russo's firearm and that Russo be placed on sick leave until Chief Croughwell received the results of the drug test. During this period, no one advised Russo of his *Miranda* rights. Subsequently, Captain Flaherty told Russo that Chief Croughwell had changed his mind and wanted Russo to either report to work in a limited capacity (no gun or field duty) or voluntarily use his sick leave. In addition, Captain Flaherty stated that Chief Croughwell had ordered Russo not to drive a car home and not to drive a car to work the next day. On Chief Croughwell's orders, a police sergeant drove Russo home.

Russo alleges that Chief Croughwell, Captain Flaherty, and others disseminated information about Russo's drug test generally to the police department before the results of the test were returned. Further, on or about November 5, 1997, members of the Hartford Police Department revealed information about the drug test to departmental personnel and others, including a newspaper reporter. The reporter contacted Russo about the drug test and other allegations of misconduct and indicated that she intended to print a story about Russo.

On December 15, 1997, after meeting with other members of the joint investigation team, State's Attorneys Thomas, Carlson, and Alexander and State Inspectors Skinner and Hammick drafted an arrest warrant for Russo based on the false statements of Russo's physician and illegally obtained evidence. On December 16, 1997, Russo's home was searched, and he was arrested by the Office of the Chief State's Attorney and charged with four counts each of Forgery in the Second Degree and Illegally Obtaining a Controlled Substance by Fraud. During the arrest, State Inspector Skinner called the State's Attorneys and Lieutenant Kenary to confirm and joke about Russo's arrest. Once Russo arrived at the Office of the Chief State's Attorney, he was paraded, while handcuffed, past State's Attorneys Thomas, Carlson, and Alexander who sneered at him. Chief Croughwell suspended Russo without pay pending the outcome of the criminal matter.

On June 28, 1998, allegedly due to the animosity toward Russo in Hartford, Russo's criminal case was transferred to the Office of the New London State's Attorney. Thomas, however, failed to transfer his corresponding files and continued to receive information regarding the criminal investigation of Russo from the DEA and the Hartford Police Department.

On September 15, 2000, all criminal charges against Russo were dropped.[3] Acting Chief of Police for Hartford, Robert Rudewicz ("Rudewicz"), continued Russo's suspension from the Hartford Police Department without pay from September 15,

---

3. On August 15, 2000, the Connecticut Superior Court, after hearing limited argument on Russo's motion to suppress, found that Russo had the requisite expectation of privacy necessary to assert a challenge to the admissibility of his prescription records, regardless of the fact that the records were obtained from a third party. *State v. Russo*, 2000 WL 1228004, at *5 (Conn.Super.Ct. Aug. 15, 2000). On September 14, 2000, the court granted Russo's motion to suppress. Transcript, September 14, 2000, Mem. of Law in Supp. of Mot. to Dismiss [Dkt. No. 78], Ex. C at 15–33––15–34. The State of Connecticut then made a motion to dismiss the charges against Russo, which the court granted. *Id.* at 15–37. On September 21, 2000, the State of Connecticut appealed, and the Connecticut Supreme Court heard oral argument on May 31, 2001. The appeal is still pending.

2000. Rudewicz informed Russo that Russo would be reinstated effective October 31, 2000 and his identification and badge would be returned on December 11, 2000. On December 11, 2000, the newly appointed Chief of Police, Bruce Marquis ("Marquis"), decided not to return Russo's badge and identification. Russo has not been reinstated since September 15, 2000, and he has not received any pay or benefits since January 2001.

The Hartford Police Union did not challenge Russo's suspension or take action to effectuate Russo's reinstatement at any time. Russo alleges that the union's failure to act was in furtherance of an implicit agreement between the Hartford Police Department defendants and the union defendants. From December 16, 1997 to December 31, 1998, Lawrence Reynolds was the president of the Hartford Police Union. From January 1, 1999 to the present, Michael Wood has been the president of the union. During all times relevant to this action, Thomas Hardwick was the vice-president of the Hartford Police Union.

## III. DISCUSSION

### A. Standard

 The several defendants in this case have filed motions to dismiss pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction can be either a facial attack or a factual attack. A facial attack merely questions the sufficiency of the pleading. When a defendant raises a facial attack to subject matter jurisdiction, the court takes the allegations in the complaint as true and draws all inferences in favor of the non-movant. 2 James Wm. Moore et al., Moore's Federal Practice § 12.30[4] (3d ed.2001). When a court reviews a complaint under a factual attack for lack of subject matter jurisdic-

tion, it must determine whether the factual predicate for subject matter exists. *Id.; United Transp. Unions 385 & 77 v. Metro-North Commuter,* 862 F.Supp. 55, 57 (S.D.N.Y.1994). Therefore, there is no presumptive truthfulness to the facts alleged in the complaint, and the court may consider evidentiary matter presented in an affidavit or otherwise in addition to the complaint. *Kamen v. AT & T Co.,* 791 F.2d 1006, 1011 (2d Cir.1986).

A motion to dismiss filed pursuant to Rule 12(b)(6) can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering such a motion, the court must accept the factual allegations alleged in the complaint as true and all inferences must be drawn in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (quotation omitted). "[B]ald assertions and conclusions of law will not suffice to state a claim ...." *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000).

### B. *Russo v. City of Hartford, et al.,* 3:97cv2380 (JCH) [Dkt. Nos. 140, 144]

In this action, Russo alleges that Chief Croughwell, Captain Flaherty, and the City of Hartford deprived him of constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution as well as claims under

Connecticut common law. All three defendants have moved to dismiss the case on various grounds.

### 1. False Arrest

■■■■ Defendants Croughwell and Flaherty challenge the Third Count of the Amended Complaint, which alleges a Connecticut common law claim of false arrest. To establish false arrest, the plaintiff must show "the unlawful restraint by one person of the physical liberty of another." *Lo Sacco v. Young*, 20 Conn.App. 6, 19, 564 A.2d 610 (1989). A formal arrest is not necessary to sustain a cause of action for false arrest. *Green v. Donroe*, 186 Conn. 265, 267, 440 A.2d 973 (1982) (citing Restatement (Second) of Torts § 41 (1965) ("The confinement may be by taking a person into custody under an asserted legal authority.")). False arrest is distinguished from malicious prosecution, where a plaintiff must prove that "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Lo Sacco*, 20 Conn.App. at 19–20, 564 A.2d 610.

■■■■ In this case, Russo alleges that Chief Croughwell directed Captain Flaherty to take Russo for a drug evaluation, which resulted in a restraint on Russo's liberty. Russo further alleges that Croughwell ordered the detention and Flaherty detained Russo without justification. Croughwell and Flaherty challenge

the sufficiency of Russo's allegations for a false arrest claim because he did not allege an actual arrest. They also rely on an argument in the Memorandum of Law in Support of the State Defendants' Motion to Dismiss Third Amended Complaint [Dkt. No. 133], where Chief State's Attorney Bailey, State's Attorneys Thomas, Carlson, and Alexander, and State Inspectors Skinner, Hammick, and Kumnick (collectively, the "State Defendants") argue that Russo has not pled favorable termination.

Russo states a cause of action for false arrest in his Third Count. Allegation of an actual arrest is not required. *Green*, 186 Conn. at 267, 440 A.2d 973. Further, to the extent that the court must interpret the cause of action as one for false arrest or malicious prosecution under *Lo Sacco*, the court construes it as a false arrest claim, where favorable termination is not required.[4] Accordingly, Croughwell and Flaherty's Motion to Dismiss the Third Count [Dkt. No. 140] is denied.

### 2. Failure to Exhaust

The City of Hartford argues that any procedural due process claim in the Second Count and the entire Fifth Count of the Amended Complaint should be dismissed for lack of subject matter jurisdiction based on Russo's failure to exhaust the administrative remedies in the Collective Bargaining Agreement. The court dealt with this issue in the prior Ruling on Motions to Dismiss [Dkt. No. 115], dismissing Russo's claims and permitting him to replead if a factual or legal basis existed to do so. The court herein restates the

---

4. The court notes that the Connecticut Superior Court in *McGhee v. Schwartz*, 1991 WL 144542 (Conn.Super.Ct. July 22, 1991), uses false arrest and malicious prosecution interchangeably. However, that court faced a claim involving the actual prosecution of the plaintiff. By requiring favorable termination, the court properly construed the claim, given

the distinction drawn by the *Lo Sacco* court between cases involving abuse of process and cases involving wholly unlawful detention or restraint. *Lo Sacco*, 20 Conn.App. at 19–20, 564 A.2d 610. Here, the plaintiff has alleged a wholly unlawful restraint of liberty, which makes the malicious prosecution case law inapposite.

standard for failure to exhaust administrative remedies, with additional clarification given Russo's minimal attempt to rectify the defect in his pleading.

Because the defendants make a factual challenge to the court's subject matter jurisdiction by alleging Russo's failure to exhaust, the court considers evidentiary matter in addition to the complaint. 2 James Wm. Moore et al., Moore's Federal Practice § 12.30[4] (3d ed.2001). Generally, a plaintiff in a section 1983 case is not required to exhaust his administrative remedies before bringing suit. *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 515, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, the *Patsy* holding does not apply in a procedural due process suit if the plaintiff failed to avail himself of the right to be heard, which is the very right being asserted. *Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir.1988) (affirming the dismissal of a tenured teacher's procedural due process claim because the teacher failed to submit to his union's grievance procedures, as set forth in a collective bargaining agreement, after he was suspended without pay); *Aronson v. Hall*, 707 F.2d 693, 694 (2d Cir. 1983) (per curiam) (affirming a district court's dismissal of a plaintiff's procedural due process claim because "[h]aving chosen not to pursue available administrative review, [plaintiff] is hardly in a position to claim that such review denied him due process"). For breach of contract actions or other state law claims where exclusive grievance and arbitration procedures govern, a plaintiff must attempt to exhaust those remedies before he resorts to the courts. *E.g., Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 167, 745 A.2d 178 (2000); *Daley v. City of Hartford*, 215 Conn. 14, 23, 574 A.2d 194 (1990).

Russo amended his complaint to add an allegation that he attempted to exhaust his administrative remedies, and he relies solely on that allegation as the basis for his opposition to the City of Hartford's motion. The exhaustion doctrine, however, requires more than a mere attempt to exhaust if the plaintiff does not allege certain exceptions that excuse the failure to exhaust fully.[5] *Schum v. S. Buffalo Ry. Co.*, 496 F.2d 328, 330 (2d Cir. 1974) ("[T]he Supreme Court recognized three situations in which suit could be instituted by a [plaintiff] despite his failure to exhaust fully his contractual remedies . . . .") (citing *Glover v. St. Louis–San Francisco Ry. Co.*, 393 U.S. 324, 329–31, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969)). The affidavit submitted by the City of Hartford indicates that Russo has not fully exhausted his administrative remedies. Accordingly, the court grants the City of Hartford's Motion to Dismiss [Dkt. No. 144] any procedural due process claim in the Second Count and the entirety of the Fifth Count.[6]

### C. *Russo v. Bailey, et al.,* 3:00cv1794 (JCH) [Dkt. Nos. 132, 138, 142, 176]

In this action, Russo alleges that the State Defendants; Chief Croughwell, Cap-

---

5. As noted in the prior Ruling, Russo has not alleged, in this complaint, any facts regarding breach of fair representation by the Hartford Police Union. *See Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

6. The court also notes, as alternative grounds for its ruling on the failure to exhaust, that Russo must either completely exhaust or attempt to exhaust before filing suit. *See McCarthy v. Madigan*, 503 U.S. 140, 144–45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). In this case, Russo filed his complaint less than a week after the alleged events. The court cannot reasonably accept any allegation, absent more, that Russo sufficiently attempted to exhaust his available remedies within the five-day period before he filed suit.

tain Flaherty, Lieutenant Kenary, Sergeant Roberts, Sergeant Lyons, Detective Lawlor, Detective Rovella, Sergeant Lilley, and Acting Chief Rudewicz (collectively the "Police Defendants"); the City of Hartford; and Lawrence Reynolds, Michael Wood, Thomas Hardwick, and the Hartford Police Union (collectively the "Union Defendants") deprived Russo of constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution as well as claims under Connecticut common law. Each defendant has moved to dismiss the complaint on various grounds.

### 1. State Defendants

The State Defendants raise Eleventh Amendment, sovereign, and statutory immunity challenges to the court's subject matter jurisdiction, challenge the sufficiency of Russo's complaint to state a cause of action for his constitutional deprivations and state common law claims, and invoke qualified immunity as a defense to the allegations.

#### a. Subject Matter Jurisdiction

▮ A claim against a state officer in his official capacity is essentially a claim against the State that implicates the Eleventh Amendment because the State is the "real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Eleventh Amendment, accordingly, bars claims against state officers in their official capacity except to the extent the plaintiff seeks prospective injunctive relief. *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Huang v. Johnson,* 251 F.3d 65, 69–70 (2d Cir.2001). A plaintiff can state a claim for money damages against the state officer in his individual capacity, as long as payment is not required from the funds of the state treasury. *Huang,* 251 F.3d at 70 (distinguish-

ing *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 462–63, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). Therefore, the court would have subject matter jurisdiction over claims against state officials in their official capacity for prospective injunctive relief and against state officials in their individual capacity for money damages. Both parties seem to concede this conclusion, albeit in an adversarial manner.

Russo has filed suit against the State Defendants in both their official and individual capacities. Further, Russo articulates a claim for prospective injunctive relief, *e.g.*, Complaint [Dkt. No. 111] ¶ 111, and money damages. Therefore, the court has a jurisdictional basis to review claims against the State Defendants in both capacities. With regard to Russo's claim for prospective injunctive relief, the State Defendants' motion to dismiss the complaint as to the State Defendants in their official capacity based on the Eleventh Amendment is denied.

Next, the State Defendants argue that Russo's state law claims for malicious prosecution, the Third Count, and intentional infliction of emotional distress, the Seventh Count, should be dismissed based on sovereign immunity and statutory immunity under Connecticut General Statutes § 4–165, regardless of the capacity in which the defendants are sued. Russo contends that he has sufficiently alleged "wanton, reckless or malicious" conduct outside the defendants' statutory authority, to fall within exceptions to the sovereign immunity doctrine and statutory immunity under § 4–165.

▮ Since "the statutory immunity provided by § 4–165 applies where sovereign immunity does not apply," the court must first address the State Defendants' assertion of sovereign immunity. *Shay v. Rossi,* 253 Conn. 134, 164, 749 A.2d 1147 (2000). "In its pristine form the doctrine

of sovereign immunity would exempt the state from suit entirely, because the sovereign could not be sued in its own courts and there can be no legal right as against the authority that makes the law on which the right depends." *Id.* at 168, 749 A.2d 1147. The doctrine "protects state officials and employees from lawsuits resulting from the performance of their duty ... and protects the state against lawsuits as well as protecting against liability." *Hultman v. Blumenthal,* 67 Conn.App. 613, 787 A.2d 666, 672–73 (2002). An exception to the sovereign immunity doctrine, however, applies where the state officer acts outside his or her statutory authority. *Shay,* 253 Conn. at 168–69, 749 A.2d 1147. In cases where the plaintiff alleges a state officer acted in excess of statutory authority, "the need to protect the government simply does not arise and the government cannot justifiably claim interference with its function." *Id.* at 169, 749 A.2d 1147 (citing *Horton v. Meskill,* 172 Conn. 615, 624, 376 A.2d 359 (1977)).

■ The Connecticut Supreme Court has not set precise standards to define conduct in excess of statutory authority because "[i]t is difficult to describe with 'any degree of specificity' where the line should be drawn between an excessive use of authority and an appropriate use of authority." *Hultman,* 67 Conn.App. 613, 620–21, 787 A.2d 666, 672–73. The court rejected two extreme interpretations, however, and stated that the proper definition fell between those standards, "namely, at one pole, the standard for abrogation of judicial immunity, and at the other pole, that a process of statutory interpretation yields a conclusion that the state officials acted beyond their authority." *Shay,* 253 Conn. at 172, 749 A.2d 1147. Therefore, a plaintiff must allege more than violation of a statute or lack of specific statutory authorization, but need not allege conduct so outside statutory authority that the officer

could no longer be considered acting within his or her official role.

■ The Connecticut Supreme Court has refined at least one subset of cases between the two poles. "When ... the state employee acts solely to further his or her own illegal scheme and not to carry out government policy, there is no reason to provide immunity from suit." *Antinerella v. Rioux,* 229 Conn. 479, 497, 642 A.2d 699 (1994). Accordingly, allegations that the defendants acted solely "with improper and self-serving motives" would be sufficient to avoid sovereign immunity. *Shay,* 253 Conn. at 173–74, 749 A.2d 1147. Given the jurisdictional nature of sovereign immunity, however, a plaintiff cannot rely on conclusory allegations of improper motive without supporting factual allegations or affidavits. *Hultman,* 67 Conn.App. 613, 614, 787 A.2d 666, 669; *see also Shay,* 253 Conn. at 174–75, 749 A.2d 1147.

■ Russo alleges that the defendants investigated, arrested, and prosecuted him in order to ruin his credibility during the period he was working as a Deputy United States Marshal and to discredit the federal investigation of the June 15 murder. To support that allegation, Russo states that State's Attorney Thomas testified to that fact and that the State Defendants focused the investigation on the period while Russo worked as a Deputy United States Marshal, which raises a possible inference that the defendants sought to discredit Russo's role in the federal murder investigation and the investigation itself. Although Russo satisfies his initial burden for pleading, the State Defendants have not presented any facts or otherwise minimized Russo's factual support for his allegations of improper motive. If Russo proves that the State Defendants acted solely to discredit him and the federal investigation of the June 15 murder, a reasonable fact finder could conclude that the State Defen-

dants acted in excess of their statutory authority. Therefore, based on the current factual allegations, the State Defendants are not entitled to the protection of the sovereign immunity doctrine.

■ Where the sovereign immunity doctrine does not apply, statutory immunity under § 4–165 may protect individual state officials from liability. *Shay,* 253 Conn. at 180, 749 A.2d 1147; Conn. Gen. Stat. § 4–165. The State Defendants challenge the sufficiency of Russo's allegations that the defendants' conduct was "wanton, reckless or malicious." In the context of statutory immunity, the Connecticut Supreme Court has adopted the same definition of "wanton, reckless or malicious" conduct as used in the common-law context. *Shay,* 253 Conn. at 181, 749 A.2d 1147. Specifically, such conduct "is more than negligence, more than gross negligence .... It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action .... [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct." *Elliott v. Waterbury,* 245 Conn. 385, 415, 715 A.2d 27 (1998), *cited in Shay,* 253 Conn. at 181, 749 A.2d 1147.

For the same reasons stated with regard to sovereign immunity, Russo's allegations that the State Defendants were motivated solely by a desire to discredit him and the federal investigation of the June 15 murder raise an inference that the defendants acted with reckless disregard of Russo's rights to freedom from unwarranted investigation, arrest, and prosecution. If proven, the facts describe highly unreasonable conduct that does not qualify for statutory immunity under § 4–165. Accordingly, since the court concludes that the State Defendants are not entitled to sovereign or statutory immunity, the court properly has subject matter jurisdiction over the malicious prosecution and intentional infliction

of emotional distress claims against the State Defendants.

### b. First Amendment claim

The State Defendants argue that Russo's allegations fail to state a claim under the First Amendment. The defendants challenge whether Russo's conduct would qualify as protected speech under the First Amendment. Russo claims that his allegations of participation in a federal corruption probe and disclosure of that probe to State Inspector Kumnick sufficiently describe protected speech under the First Amendment.

■ Assuming, without holding, that Russo's conduct qualifies as speech, the court addresses whether it should be considered speech on a matter of public concern. "Whether employee speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." *Rankin v. McPherson,* 483 U.S. 378, 384–85, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). The Second Circuit has held that, even if speech touches on a matter of public concern, it will not be protected if "the employee's motive for the speech is private and personal." *Blum v. Schlegel,* 18 F.3d 1005, 1012 (2d Cir.1994); *see also Lewis v. Cowen,* 165 F.3d 154, 163–64 (2d Cir.1999) ("In reaching this decision, the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."). "The determinative question is whether that interest arises from the speaker's status as a public citizen or from the speaker's status as a public employee." *Blum,* 18 F.3d at 1012.

■ In this case, Russo alleges retaliation for his assignment to and work with the Federal Gang Task Force and federal corruption probe into the Hartford Police

Department. Also, he claims that by notifying State Inspector Kumnick of the federal corruption probe, he engaged in speech on a matter of public concern. While these events touch on matters of public concern, namely corruption in the Hartford Police Department, Russo does not allege that he was motivated by anything more than his employment responsibilities. While the court could draw inferences from the context of Russo's conduct, no reasonable inference establishes a motivation to achieve a broader public purpose than Russo's personal interest in doing his job. Therefore, Russo fails to state a claim for violation of the First Amendment. The court dismisses the First Amendment claim against the State Defendants, without prejudice to replead if a factual and legal basis exists to do so.

### c. Substantive Due Process

■ Next, the State Defendants challenge whether Russo's allegations are sufficiently outside the scope of the Fourth Amendment to state a substantive due process claim. Russo argues that allegations of a conspiracy to discredit him, jeering after his arrest, and continued harassment state a claim for substantive due process. The court noted in its prior Ruling that "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The Fourth Amendment, as an explicit textual source of constitutional protection, covers only searches and seizures. *County of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Accordingly, while claims arising from a plaintiff's arrest and prosecution would fall within the scope of the Fourth Amendment, that Amendment would not cover a cause of action for government abuse of process in the investigation or pursuit of a suspect. *See id.* at 844, 118 S.Ct. 1708 (recognizing the possibility of a cause of action under substantive due process for state action in failed attempts to arrest suspects—for conduct that does not "terminat[e] . . . freedom of movement through means intentionally applied").

■ Supporting his substantive due process cause of action, Russo claims that the State Defendants conspired to ruin Russo's credibility and the reputation of the Federal Gang Task Force. Reading the complaint in the light most favorable to plaintiff, Russo alleges that the defendants allowed a witness to fabricate evidence and specifically sought to discredit Russo and the federal investigation of the June 15 murder. These events occurred outside the more specific context of Russo's seizure—his arrest and prosecution. Therefore, reading the complaint in the light most favorable to plaintiff, the court concludes that the State Defendants have not presented grounds sufficient to dismiss the substantive due process claim. Accordingly, State Defendants' motion to dismiss the substantive due process claim is denied.

### d. Procedural Due Process

For the procedural due process claims, the State Defendants make the same arguments that were a subject of the prior Ruling. The court dismissed Russo's claim with leave to replead if a factual and legal basis existed to do so. Specifically, the court noted that Russo lacked any allegation of the sort of process to which he was entitled or how such entitlement was denied him. The court considered Russo's allegations nothing more than bald assertions and conclusions of law without any statements reflecting the material ele-

ments of a procedural due process claim. In response to the prior Ruling, Russo made no changes and merely relies on his conclusory statements to survive dismissal. For the same reasons stated in the prior ruling,[7] the court grants the State Defendants' motion to dismiss the procedural due process claim.

### e. Equal Protection

Next, the State Defendants challenge Russo's equal protection claim for failure to allege, among other things, that other individuals were similarly situated, but treated differently. Russo recognizes that he has not made any allegations of differential treatment by the State Defendants, other than conclusory statements. Pl. Memo. in Opp. at 15. Russo argues, however, that allegations of a conspiracy between the Police Defendants, who allegedly engaged in differential treatment, and the State Defendants would be sufficient to satisfy the equal protection standard.

■■■ To state a claim against an individual defendant for constitutional deprivation under section 1983, the plaintiff must allege that the defendant directly participated in the violation of the plaintiff's rights. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). Other grounds for personal liability exist, if the defendant had supervisory authority over individuals that committed the constitutional violations. *Id.*

■■■ In this case, Russo has alleged a conspiracy between the Police Defendants and the State Defendants as a basis for liability. The alleged conspiracy began September 9, 1997, when members of both groups met to coordinate the joint investigation. However, the events that Russo cites as differential treatment in his opposition brief—denying Russo access to work and requiring additional paperwork—started in the spring of 1997, months before the alleged conspiracy. The court cannot infer from the allegations in Russo's complaint that the State Defendants participated directly in any form of differential treatment. Accordingly, the court grants the State Defendants' motion to dismiss the equal protection claim.

### f. Malicious Prosecution and False Arrest claims

Next, the State Defendants argue that Russo has not and cannot allege favorable termination—indicating innocence—sufficient to support claims for malicious prosecution and false arrest. Russo contends that Connecticut courts do not require the high standard for favorable termination described by the defendants.

■■■ For a vexatious litigation or malicious prosecution claim, Connecticut requires that a plaintiff allege the prior action "was initiated maliciously, without probable cause, and terminated in the plaintiff's favor." *Zeller v. Consolini,* 235 Conn. 417, 424, 667 A.2d 64 (1995). The Connecticut Supreme Court thoroughly addressed the scope of the termination prong in a vexatious litigation suit against parties who had abandoned the prior action. *DeLaurentis v. City of New Haven,* 220 Conn. 225, 250–52, 597 A.2d 807 (1991). The *DeLaurentis* court set out three possi-

---

7. Russo argues that he added allegations in the complaint regarding his property right in continued employment and denial of pay without the procedures granted in the collective bargaining agreement. Russo's citations to paragraphs of the complaint do not support his argument. Moreover, even if the collective bargaining agreement were properly alleged as the basis for his procedural due process claim, Russo has not alleged what process in the agreement he was denied. Finally, without commenting on the merits, the court fails to understand the relevance of the employment claims to the State Defendants. Russo has not provided any connection between the State Defendants and the terms or control of his employment.

ble approaches to defining termination in favor of the plaintiff.

The first, and most rigid, requires that the action have gone to judgment resulting in a verdict of acquittal, in the criminal context, or no liability, in the civil context. The second permits a vexatious suit action even if the underlying action was merely withdrawn so long as the plaintiff can demonstrate that the withdrawal took place under circumstances creating an inference that the plaintiff was innocent, in the criminal context, or not liable, in the civil context. The third approach, while nominally adhering to the "favorable termination" requirement, in the sense that any outcome *other* than a finding of guilt of liability is favorable to the accused party, permits a malicious prosecution or vexatious suit action whenever the underlying proceeding was abandoned or withdrawn without consideration, that is, withdrawn without either a plea bargain or a settlement favoring the party originating the action.

*Id.* at 250, 597 A.2d 807 (footnotes omitted). The *DeLaurentis* court proceeded to distance Connecticut law from a strict interpretation of "favorable termination."

Notwithstanding our recitation of the term *"favorable* termination" in *Vandersluis* and a few other cases, we have never required a plaintiff in a vexatious suit action to prove a favorable termination either by pointing to an adjudication on the merits in his favor or by showing affirmatively that the circumstances of the termination indicated his innocence or nonliability, so long as the proceeding has terminated without consideration.

*Id.* at 251, 597 A.2d 807 (citations omitted). By specifically rejecting the just-recited first and second approaches as never re-

quired by Connecticut courts, the *DeLaurentis* court clearly adopted the third approach to the termination prong. *See Shea v. Chase Manhattan Bank, NA,* NO. CV 960149647S, 2000 WL 288360, at *4 (Conn.Super.Ct. Mar. 6, 2000); *see also See v. Gosselin,* 133 Conn. 158, 160, 48 A.2d 560 (1946) (accepting entry of nolle prosequi by prosecutor as favorable termination under malicious prosecution standard) ("It is sufficient if he was discharged without a trial under circumstances amounting to an abandonment of the prosecution without request from or by arrangement with him.").

The *DeLaurentis* court considered the burden to establish the termination prong a minimal one, with little emphasis on whether the actual termination was favorable to the plaintiff. *DeLaurentis,* 220 Conn. at 251, 597 A.2d 807. "Instead, we have always viewed the issue of whether the prior outcome was 'favorable' to the plaintiff as relevant to the issue of probable cause." *Id.* Thus, so long as the prior action terminated without any adjudication against, or settlement requiring consideration from, the vexatious-litigation plaintiff, the Connecticut Supreme Court deems the termination prong satisfied.

■ Although on appeal, the prior action in this case, Russo's criminal case, terminated based on a suppression issue with no indication of Russo's guilt. Although there was no indication of innocence either, such is not required in Connecticut for the termination prong of a malicious prosecution cause of action. *Id.* at 251, 597 A.2d 807. Therefore, the court denies the State Defendants' motion to dismiss the malicious prosecution claim. Further, since the State Defendants only challenge the false arrest claim on the same grounds, the court denies that motion also.[8]

8. Since Russo does not argue that the favor-

able termination requirement is inapplicable

### g. Qualified Immunity

With regard to the claims based on the State Defendants' investigation, arrest, and prosecution of Russo, the defendants assert the special defense of qualified immunity. The parties focus on two rights that the court used to conclude, in its prior Ruling, that the State Defendants would be entitled to qualified immunity.

■ First, if the defendants initiated a criminal investigation of Russo under the ruse of a warrantless administrative investigation of his physician, then the court previously held that initiating the investigation would violate the clearly established right to be free from unreasonable search and seizure. The court held that the State Defendants were entitled to qualified immunity, however, because Russo failed to allege how they directly participated in initiating the investigation. In the Third Amended Complaint, Russo alleges that the State Defendants initiated the investigation of Russo's physician, or at least targeted Russo as the focus of the investigation, and directed the course of that investigation. With regard to Russo's right to be free from unreasonable search and seizure, including a ruse investigation under warrantless administrative procedures, the State Defendants only argue that Russo has no right to be free from investigation—challenging the first prong of the qualified immunity analysis, whether the defendants violated a clearly established right. Memo. of Law in Support of State Defs. Mot. to Dismiss, at 25 n. 4. The defendants ignore the court's holding that initiating an administrative investigation of Russo under the ruse of investigating his physician would violate Russo's clearly es-

tablished rights. Ruling [Dkt. No. 115], at 38. Accordingly, the State Defendants have not presented sufficient grounds for qualified immunity regarding the investigation because Russo has rectified the problems in the Second Amended Complaint, as identified by the court.[9]

■ As a second right under dispute, if the defendants processed Russo's arrest warrant based on the prescription records allegedly obtained illegally by the Police Defendants, then the court previously held that the State Defendants reliance on the records was objectively reasonable, which satisfied the qualified immunity standard for the State Defendants with regard to that deprivation of rights. The court relied on Connecticut General Statutes § 21a–265, which permits administrative inspection of prescription records, as the basis for holding any mistake by the State Defendants objectively reasonable if they used the records to process an arrest warrant for Russo. Russo attempts to argue the merits of whether he had a reasonable expectation of privacy in the prescription records that would justify a cause of action under the Fourth Amendment. As the court noted in its prior Ruling, however, the Fourth Amendment standard is not the measure for judging qualified immunity. If the defendants made an objectively reasonable mistake, as to what the law requires, in relying on the records, then they would still be entitled to qualified immunity, even if they violated Russo's Fourth Amendment rights. Since Russo has not presented any new arguments in this regard, the court relies on its prior Ruling to conclude that the State Defen-

---

to his false arrest claim against the State Defendants, the court does not address the issues raised by *McGhee v. Schwartz,* 1991 WL 144542 (Conn.Super.Ct.1991), with regard to the false arrest claim in 3:97cv2380. *See supra* note 4.

9. Since the defendants do not argue that their conduct in initiating the investigation was objectively reasonable under the qualified immunity inquiry, the court does not address the issue.

dants are entitled to qualified immunity for their participation in procuring Russo's prescription records and arresting Russo based on those records.

### h. Intentional Infliction of Emotional Distress

Finally, the State Defendants challenge the intentional infliction of emotional distress claim for failure to state a cause of action under Connecticut common law, specifically the defendants argue that Russo fails to allege conduct that would qualify as extreme and outrageous. Russo argues that his allegations of the State Defendants' conspiracy to discredit him and their conduct in investigating, arresting, and prosecuting him sufficiently describe extreme and outrageous behavior.

■ Under Connecticut law, to establish a claim of intentional infliction of emotional distress, a plaintiff must plead and prove that (a) defendants intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of their conduct; (b) defendants' conduct was extreme and outrageous; (c) defendants' conduct caused the plaintiff's distress; and (d) the emotional distress sustained by the plaintiff was severe. *Appleton v. Bd. of Educ. of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059 (2000) (citing *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986)). The standard in Connecticut to demonstrate extreme and outrageous conduct is stringent. *Huff v. West Haven Bd. of Educ.,* 10 F.Supp.2d 117, 122 (D.Conn.1998). " '[E]xtreme and outrageous' conduct is defined as that which 'exceed[s] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.' " *Id.* (quoting *DeLaurentis v. New Haven,* 220 Conn. 225, 267, 597 A.2d 807 (1991)). Mere conclusory allegations are insufficient as a matter of

law to support a cause of action for intentional infliction of emotional distress. *Id.* (citing *Ruffolo v. Oppenheimer & Co., Inc.,* 1991 WL 17857, at *2 (S.D.N.Y. Feb.5, 1991.); *Melfi v. City of Danbury,* 1993 WL 360650, at *2 (Conn.Super.Ct. Sept. 8, 1993)).

■ The court noted in its prior Ruling, with regard to defendants Croughwell and Flaherty, that allegations of a conspiracy to discredit Russo—even coupled with allegations of invasion of privacy and disclosure of confidential information—would be insufficient to sustain a claim for intentional infliction of emotional distress given the stringent standard for "extreme and outrageous" conduct. With regard to the State Defendants, Russo alleges harassment and humiliation, but only in the context of his arrest and prosecution, where society would expect some degree of perceived harassment and humiliation. The allegations do not raise sufficiently aggravating circumstances to remove the State Defendants' behavior from the normal bounds tolerated by decent society. Accordingly, the court grants the State Defendants' motion to dismiss the intentional infliction of emotional distress claim.

For the foregoing reasons, the State Defendants' Motion to Dismiss [Dkt. No. 132] is granted in part and denied in part. The court asserts subject matter jurisdiction over the case and rejects defendants' claims of Eleventh Amendment, sovereign, and statutory immunity. Russo's claims based on the First Amendment, procedural due process, equal protection, and intentional infliction of emotional distress are dismissed for failure to state a claim. Also, the court holds that the defendants are entitled to qualified immunity on Fourth Amendment claims arising from defendants' conduct in procuring Russo's prescription records and using those rec-

ords to process his arrest. In all other respects, the motion is denied.[10]

## 2. Union Defendants

 The Union Defendants only challenge the Seventh Count of the Third Amended Complaint for failure to state a cause of action for intentional infliction of emotional distress. Russo argues that the Union Defendants conspired to frustrate his interests despite a duty to protect him with regard to the Hartford Police Department. The court relies on the standard for intentional infliction of emotional distress previously articulated.

With regard to the Union Defendants, Russo only alleges a failure to act despite a duty to do so, and he does not allege sufficient aggravating circumstances surrounding their conduct to remove that behavior from the normal bounds tolerated by decent society. Accordingly, the court grants the Union Defendants' Motion to Dismiss [Dkt. No. 138] the intentional infliction of emotional distress claim.

## 3. Police Defendants

The Police Defendants challenge the sufficiency of Russo's claims of constitutional deprivation and his causes of action under Connecticut common law for false arrest and malicious prosecution.

### a. Substantive Due Process

 The Police Defendants adopt the argument made by the State Defendants with regard to Russo's substantive due process claim that Russo failed to allege conduct outside the scope of the Fourth Amendment. Russo cites specific allegations in the complaint for different subsets of the Police Defendants. The court applies the standard previously described for substantive due process claims.

With regard to Chief Croughwell, Captain Flaherty, Lieutenant Kenary, and Sergeants Roberts and Lilley, Russo claims that they harassed and intimidated him while he was deputized as a United States Marshal, including locking him out of his office, moving his desk, and searching and removing the contents of his desk. He also alleges those defendants pursued an illegal investigation of him. With respect to Chief Croughwell only, Russo claims that he conveyed threats by Sergeant Lyons and Detective Lawlor to Russo and suspended Russo without pay pending resolution of Russo's criminal case. Pertaining to Detective Rovella only, Russo alleges he notified Sergeant Lyons and Detective Lawlor that they were targets of the federal corruption probe. With respect to Lyons and Lawlor, Russo claims they threatened physical violence after learning that Russo was helping with the federal probe. Finally, regarding Acting Chief Rudewicz, Russo's opposition brief does not cite specific allegations to support his substantive due process claim, but the complaint describes the violation as Rudewicz's failure to reinstate Russo after the criminal charges were dismissed on September 15, 2000. These events occurred outside the context of Russo's arrest and prosecution. Therefore, reading the complaint in the light most favorable to plaintiff, the court concludes that the Police Defendants have not presented grounds sufficient to dismiss the substantive due process claim. Accordingly, the Police Defendants' motion to dismiss the substantive due process claim is denied.

### b. Procedural Due Process

For the procedural due process claims, the Police Defendants adopt the arguments of the State Defendants, which re-

---

10. The court has not addressed defendants' argument that the pendant state claims should be dismissed because the argument was premised on the dismissal of all federal claims. Since the court did not dismiss the substantive due process and Fourth Amendment claims, the court considers the argument moot.

lied on the court's prior Ruling. As noted with regard to the State Defendants' motion, Russo made no changes to the complaint and merely relies on his conclusory statements to survive dismissal. Although Russo's opposition brief extrapolates from his complaint to argue that it states a property interest, the basis for due process, and the process denied, his allegations in the complaint are insufficient to support that interpretation. For the same reasons stated in the prior Ruling, the court grants the Police Defendants' motion to dismiss the procedural due process claim.

### c. Equal Protection

The Police Defendants challenges Russo's equal protection claim based on the court's prior dismissal for failure to allege differential treatment or other basis for an equal protection claim. Russo argues that he has specifically alleged differential treatment and no rational basis for that treatment.

■ "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assoc. v. Village of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) (citing *Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). Successful equal protection claims may be brought by a "class of one" where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564–65, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (citing *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster County,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989)). Before *Olech,* the Second Circuit permitted selective enforcement claims based on a "class of one" if the plaintiff could "show both (1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen,* 273 F.3d at 499 (internal quotations omitted) (quoting *LaTrieste Rest. & Cabaret v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994)). In *Harlen,* the Court of Appeals assumed without holding that a plaintiff who establishes differential treatment could state an equal protection claim by showing "either that there was no rational basis for the unequal treatment received, or that the [unequal treatment] was motivated by animus." *Id.* at 500 (citation omitted).

■ Russo has alleged that similarly situated individuals were treated differently and that the defendants have not expressed any legitimate basis for the differential treatment.[11] Complaint [Dkt. No.

---

11. The Police Defendants correctly observe that Russo has not added any allegations of differential treatment in response to the court's prior Ruling dismissing the equal protection claim. As the court noted in that Ruling, Russo did not dispute the Fourteenth Amendment issues in his opposition to the motions to dismiss. Without the benefit of objections from Russo, the court accepted the defendants' argument that plaintiff failed to state a claim for equal protection. Since Russo has briefed the issue now and pointed to specific allegations in the complaint that the court considers sufficient to survive a motion to dismiss the equal protection, the Police Defendants cannot rely solely on the court's prior holding, rendered without briefing by both sides.

With regard to the equal protection claim against Acting Chief Rudewicz, the court notes the same problem with respect to Rudewicz relying solely on the prior Ruling. Although Russo has not briefed the issue focusing on Rudewicz, Rudewicz seeks a specific holding on the sufficiency of paragraphs 3,

111] ¶¶ 24–25, 68 (First Count); 3, 11, 23 (Fourth Count). Accordingly, the court denies the Police Defendants' motion to dismiss the equal protection claim.

### d. Malicious Prosecution and False Arrest Claims

Next, the Police Defendants adopt the arguments of the State Defendants that Russo has not pled favorable termination—indicating innocence—to support his malicious prosecution and false arrest claims. Russo contends that the high standard for favorable termination described by the defendants is not required by Connecticut courts. As the court concluded for the State Defendants' arguments, Connecticut does not require any indication of innocence in the termination of the prosecution to support a malicious prosecution or false arrest claim.[12] Accordingly, the Police Defendants' motion to dismiss the malicious prosecution and false arrest claims is denied.

### e. First Amendment Claim

Next, the Police Defendants construe a portion of the First Count as a hostile work environment claim analogous to claims under Title VII, based on paragraph 67 of the Third Amended Complaint. The defendants argue that Russo has not pled sufficient facts to support a Title VII claim for hostile work environment and that Russo must satisfy the exhaustion doctrine to bring the claim in court. Russo denies he made a claim analogous to Title VII, characterizing the allegation as a retaliation claim under the First Amendment.

In the complaint, Russo identified the First Count as stating a violation of the First, Fourth, and Fourteenth Amendments. The court has no reason to doubt that Russo seeks to assert a First Amendment claim given the stated intention in his complaint and opposition. A retaliation claim need not state facts that would support a Title VII hostile work environment cause of action, and the plaintiff need not exhaust his administrative remedies for a § 1983 action under the First Amendment. Therefore, the Police Defendants' motion to dismiss the First Amendment claim is denied.

### f. Intentional Infliction of Emotional Distress Claim

Finally, the Police Defendants challenge the intentional infliction of emotional distress claim for failure to state a cause of action under Connecticut common law, specifically the defendants argue that Russo fails to allege conduct that would qualify as extreme and outrageous. Russo argues that his allegations of the Police Defendants' conspiracy to discredit him and their conduct in investigating, arresting, and prosecuting him sufficiently describe extreme and outrageous behavior. The court relies on the standard for intentional infliction of emotional distress previously articulated.

 The court noted in its prior Ruling, with regard to defendants Croughwell and Flaherty, that allegations of a conspiracy to discredit Russo—even coupled with allegations of invasion of privacy and disclosure of confidential information—would be insufficient to sustain a claim for inten-

---

11, and 23 in the Fourth Count to support an equal protection claim. The court concludes that those allegations plead the minimum elements for equal protection necessary to survive a motion to dismiss.

**12.** As also noted in reference to the State Defendants' arguments, Russo does not argue

that the favorable termination requirement is inapplicable to his false arrest claim. Therefore, the court does not address the issues raised by *McGhee v. Schwartz,* 1991 WL 144542 (Conn.Super.Ct.1991), with regard to the false arrest claim in 3:97cv2380. *See supra* note 4.

tional infliction of emotional distress given the stringent standard for "extreme and outrageous" conduct. With regard to most of the Police Defendants, Russo alleges harassment and humiliation, but only in the context of his arrest and prosecution, where society would expect some degree of perceived harassment and humiliation. Those allegations do not raise sufficiently aggravating circumstances to remove the Police Defendants' behavior from the normal bounds tolerated by decent society. For Defendants Croughwell, Lyons, and Lawlor, however, Russo alleges that the defendants—fellow officers and his police chief—threatened physical violence upon learning that Russo was involved in the federal corruption probe. In conjunction with other allegations regarding those defendants, Russo has sufficiently pled extreme and outrageous conduct. Accordingly, with the exception of Defendants Croughwell, Lyons, and Lawlor, the court grants the Police Defendants' motion to dismiss the intentional infliction of emotional distress claim.

For the foregoing reasons, the Police Defendants' Motion to Dismiss [Dkt. No. 142] is granted in part and denied in part. Russo's claims based on procedural due process and intentional infliction of emotional distress—except as it pertains to Defendants Croughwell, Lyons, and Lawlor—are dismissed for failure to state a claim. In all other respects, the motion is denied.

### 4. City of Hartford

The City of Hartford asserts that the court lacks subject matter jurisdiction over Russo's procedural due process and state law claims because he failed to exhaust his administrative remedies. The City of Hartford also challenges the sufficiency of Russo's claims for constitutional deprivation and under Connecticut common law.

#### a. Failure to Exhaust

The City of Hartford argues that the court lacks subject matter jurisdiction over any claims that depend upon the terms of the collective bargaining agreement because Russo failed to exhaust his administrative remedies under that agreement. Russo has not briefed the exhaustion issue in his opposition memorandum. The court relies on the standard for exhaustion of administrative remedies previously articulated.

In its prior Ruling, the court declined to dismiss Russo's claim against the City of Hartford in the Second Amended Complaint because he had not alleged a violation of procedural due process, which would require him to exhaust his available remedies. Further, the Second Amended Complaint did not allege a claim for wrongful termination or constructive discharge against the City of Hartford. The court made clear in other portions of that Ruling, however, that procedural due process claims and other state law claims involving the collective bargaining agreement would be subject to dismissal for failure to exhaust available remedies if Russo did not allege full exhaustion or an attempt to exhaust and breach of fair representation by the Hartford Police Union or other mitigating factors.

 In the Third Amended Complaint, Russo added a procedural due process claim to the Eighth Count and alleged a new cause of action for wrongful termination or constructive discharge in the Ninth Count. Russo has not incorporated any allegation of an attempt to exhaust administrative remedies in the Eighth Count. Accordingly, the court lacks subject matter jurisdiction over the procedural due process claims in the Eighth Count.

With regard to the Ninth Count, the court considers the affidavit submitted by the City of Hartford.[13] The affidavit

---

**13.** The City of Hartford's factual challenge to

the court's jurisdiction permits the court to

states that Russo has attempted to exhaust his administrative remedies by starting the grievance process established by the collective bargaining agreement. In light of the incorporated claims that the Hartford Police Union breached its duty of fair representation, Russo's attempt to exhaust set forth in the affidavit establishes the court's subject matter jurisdiction over the Ninth Count. *See Vaca,* 386 U.S. at 184–86, 87 S.Ct. 903. Therefore, the court lacks subject matter jurisdiction over the procedural due process claims in the Eighth Count, but has jurisdiction over the claims in the Ninth Count.

### b. First Amendment claim

The City of Hartford adopts the arguments of the State Defendants that Russo's allegations fail to state a claim under the First Amendment. The defendants challenge whether Russo's conduct would qualify as protected speech under the First Amendment. Russo claims that his allegations of participation in the federal task force murder investigation, participation in the federal corruption probe, and disclosure of that probe to State Inspector Kumnick sufficiently describe protected speech under the First Amendment.

As with the State Defendants, the court assumes, without holding, that Russo's conduct qualifies as speech and addresses whether it should be considered speech on a matter of public concern. The court relies on the standard for First Amendment claims and speech on a matter of public concern previously articulated.

In this case, Russo alleges retaliation for his assignment to and work with the Federal Gang Task Force and federal corruption probe into the Hartford Police Department. Also, he claims that by notifying State Inspector Kumnick of the federal corruption probe, he engaged in speech on a matter of public concern. While these events touch on matters of public concern, namely corruption in the Hartford Police Department, Russo does not allege that he was motivated by anything more than his employment responsibilities. While the court could draw inferences from the context of Russo's conduct, no reasonable inference establishes a motivation to achieve a broader public purpose than Russo's personal interest in doing his job. Therefore, Russo fails to state a claim for violation of the First Amendment. The court dismisses the First Amendment claim against the City of Hartford, without prejudice to replead if a factual and legal basis exists to do so.

### c. Substantive Due Process

Next, the City of Hartford adopts the State Defendants' argument that Russo's allegations are not sufficiently outside the scope of the Fourth Amendment to state a substantive due process claim. Russo argues that allegations of a conspiracy to discredit him, an unlawful investigation, jeering after his arrest, and continued harassment state a claim for substantive due process. The court applies the standard previously described for substantive due process claims.

Russo alleges that his supervisors harassed and intimidated him while he was deputized as a United States Marshal, including locking him out of his office, moving his desk, and searching and removing the contents of his desk; pursued an illegal investigation of him; and conveyed threats of physical violence by Sergeant Lyons and Detective Lawlor to Russo. These events occurred outside the context of Russo's arrest and prosecution. Therefore, reading the complaint in the light most favorable to plaintiff, the court con-

consider the affidavit submitted by the City of Hartford and obligates Russo to respond regarding any factual disputes.

cludes that the City of Hartford has not presented grounds sufficient to dismiss the substantive due process claim. Accordingly, the City of Hartford's motion to dismiss the substantive due process claim is denied.

#### d. Equal Protection

Next, the City of Hartford adopts the State Defendants' argument that Russo fails to allege an equal protection claim. Russo claims that allegations of differential conduct by his supervisors without any rational basis satisfy the equal protection standard. The court relies on the standard for equal protection articulated with regard to the Police Defendants' arguments.

Russo has alleged that similarly situated individuals were treated differently and that the defendants have not expressed any legitimate basis for the differential treatment.[14] Complaint [Dkt. No. 111] ¶¶ 24–25, 68. Accordingly, the court denies the City of Hartford's motion to dismiss the equal protection claim.

#### e. Malicious Prosecution and False Arrest claims

Next, the City of Hartford adopts the arguments of the State Defendants that Russo has not pled favorable termination—indicating innocence—to support his malicious prosecution and false arrest claims. Russo contends that the high standard for favorable termination described by the defendants is not required

by Connecticut courts. As the court concluded for the State Defendants' arguments, Connecticut does not require any indication of innocence in the termination of the prosecution to support a malicious prosecution or false arrest claim.[15] Accordingly, the City of Hartford's motion to dismiss the malicious prosecution and false arrest claims is denied.

#### f. Wrongful Termination/Constructive Discharge claim

Finally, the City of Hartford challenges the sufficiency of Russo's Ninth Count, for wrongful termination or constructive discharge, because Russo has not pled that he was an employee-at-will, as required for a wrongful termination cause of action, or that he resigned, as required for a constructive discharge claim. Russo contends that his allegations sufficiently state a cause of action.

 In a cause of action for wrongful termination, the plaintiff must allege that the employer discharged the plaintiff in violation of public policy. *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 474, 480, 427 A.2d 385 (1980). In a cause of action for constructive discharge, the plaintiff must allege that he resigned after the employer intentionally created an intolerable work atmosphere. *Brittell v. Dep't of Correction*, 247 Conn. 148, 178, 717 A.2d 1254 (1998). Russo has not pled either that he was terminated or that he resigned. Therefore, he has not alleged a

---

**14.** The court notes that the State Defendants' argument, which the City of Hartford adopted, relied on the court's prior Ruling dismissing the equal protection claim against the State Defendants. The court never ruled, however, on any equal protection claims against the City of Hartford in that Ruling. Further, to the extent that the court's dismissal, in the prior Ruling, of the equal protection claim against the Police Defendants affects claims against the City of Hartford, the court references its earlier comments in this Ruling regarding the context of the prior claim

against the Police Defendants. *See supra* note 10.

**15.** As also noted in reference to the State Defendants' arguments, Russo does not argue that the favorable termination requirement is inapplicable to his false arrest claim. Therefore, the court does not address the issues raised by *McGhee v. Schwartz*, 1991 WL 144542 (Conn.Super.Ct.1991), with regard to the false arrest claim in 3:97cv2380. *See supra* note 4.

cause of action for wrongful termination or constructive discharge, and the court dismisses the Ninth Count, without prejudice to replead if a factual and legal basis exists to do so.

For the foregoing reasons, the City of Hartford's Motion to Dismiss [Dkt. No. 176] is granted in part and denied in part. Russo's claims for procedural due process are dismissed for lack of subject matter jurisdiction. The court also dismisses the First Amendment cause of action and the Ninth Count for failure to state a claim. In all other respects, the motion is denied.

### D. *Russo v. Marquis, et al.,* 3:00cv2382 (JCH) [Dkt. No. 147]

In this action, Russo alleges that Chief Marquis and the City of Hartford deprived him of constitutional rights under the First and Fourteenth Amendments to the United States Constitution as well as a claim for intentional infliction of emotional distress under Connecticut common law. Chief Marquis has moved to dismiss specific counts on various grounds.

### 1. First Amendment Claim

Chief Marquis construes a portion of the first count as a hostile work environment claim analogous to claims under Title VII, based on paragraph 43 of the Third Amended Complaint.[16] Marquis argues that Russo has not pled sufficient facts to support a Title VII claim for hostile work environment and that Russo must satisfy the exhaustion doctrine to bring the claim in court. Russo denies he made a claim analogous to Title VII, characterizing the First Count as a retaliation claim under the First Amendment.

In the complaint, Russo identified the First Count as stating a "First Amendment Violation as to Defendant Marquis."

The court has no reason to doubt that Russo seeks to assert a First Amendment claim given the stated intention in his complaint and opposition. A retaliation claim need not state facts that would support a Title VII hostile work environment cause of action, and the plaintiff need not exhaust his administrative remedies for a § 1983 action under the First Amendment. Therefore, the motion to dismiss as to the First Count is denied.

### 2. Equal Protection

Chief Marquis challenges Russo's equal protection claim in the Second Count for failure to allege either that Russo was a member of a suspect class or that defendants' actions lacked any rational basis. Russo argues that he has specifically alleged that the defendants' acts lacked any rational basis. The court uses the same standard for equal protection previously articulated.

Russo has alleged that similarly situated individuals were treated differently and that the defendants have not expressed any legitimate basis for the differential treatment. Complaint [Dkt. No. 21] ¶¶ 27, 28, 31, 32, 33, 35, 44. Marquis argues that the court should conclude that a rational basis exists for the defendants' actions. The court recognizes that if there is no allegation of suspect or quasi-suspect classification or classification by fundamental rights, then state action will be afforded a strong presumption of validity and subject only to rational basis review. *Heller v. Doe,* 509 U.S. 312, 319–20, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Further, the court acknowledges that the defendants are under no obligation to provide a rational basis for the alleged violation; the court can dismiss the count on the pleadings if it can conceive of any rational basis for the

---

16. Russo has only amended the complaint in this action once, so it would properly be labeled the Amended Complaint. The complaint, however, bears the heading "Third Amended Complaint." To avoid confusion, the court uses the heading on the document.

classification. *Connolly v. McCall*, 254 F.3d 36, 42 (2d Cir.2001).

The court refuses, however, to speculate as to conceivable rational bases for the defendants' actions. Unlike *Danese v. Knox*, 827 F.Supp. 185, 196 (S.D.N.Y. 1993), which Marquis cites, this case does not present an obvious distinction, such as management and labor, that would justify dismissing Russo's prima facie equal protection claim on a motion to dismiss. Accordingly, the court denies Marquis's motion to dismiss as to the Second Count.

### 3. Procedural Due Process

Marquis next challenges the Third and Fourth Counts. Russo's response groups the counts and characterizes both as procedural due process claims. Marquis argues that any procedural due process claim should be dismissed for lack of subject matter jurisdiction based on Russo's failure to exhaust his administrative remedies. In this case, Russo only argues in his opposition that he alleged repeated requests for reinstatement. Based on the affidavit submitted by Marquis, the court notes that Russo has filed a grievance regarding his reinstatement, but that the process is not complete. Given the insufficiency of Russo's allegations and the lack of factual support for any claim that he exhausted his administrative remedies, the court grants Marquis's motion to dismiss as to the Third and Fourth Counts based

on the case law previously discussed in this Ruling with regard to *Russo v. City of Hartford, et al.*, 3:97cv2380 (JCH).[17]

### 4. Substantive Due Process

Marquis also challenges the sufficiency of the Fifth Count to state a cause of action for violation of substantive due process under the Fourteenth Amendment. Russo cites specific allegations in the complaint as satisfying the substantive due process standard.

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995) (citing *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994)). The Second Circuit has noted that "malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir.2001).

Supporting his substantive due process claim, Russo emphasizes his allegations that Marquis has refused to investigate Russo's allegations of physical threats by Sergeant Lyons and Detective Lawlor or to take steps to prevent potential harm to Russo.[18] Reading the com-

---

**17.** Unlike *Russo v. City of Hartford*, Russo makes an allegation that may implicate an exception to the exhaustion doctrine, but he does not argue that position in his opposition. Similar to the breach of fair representation by the Union raised in *Vaca*, 386 U.S. at 185, 87 S.Ct. 903, Russo alleges the implicit cooperation of the Hartford Police Union in preventing Russo from returning to work. Complaint [Dkt. No. 21] ¶ 18. The court notes, however, that Russo must still attempt to exhaust before filing suit. *See id.* at 186, 87 S.Ct. 903 (holding that plaintiff could file suit

after the Union mishandled his grievance, even though his administrative remedies were not exhausted fully). In this case, Russo filed his complaint two days after the alleged events involving Chief Marquis. The court cannot reasonably accept, without more, any allegation that Russo sufficiently attempted to exhaust his available remedies or that the Union breached its duty of fair representation within the two-day period before he filed suit.

**18.** Russo also points to his allegations that Marquis failed to reinstate him despite repeated requests. Those allegations, however,

plaint in the light most favorable to plaintiff, Russo states that Marquis intentionally refused to investigate alleged physical threats by other police officers or discipline those officers because Marquis sought to oppress or injure Russo. Complaint [Dkt. No. 21] ¶¶ 12–17, 20–21, 47. As construed, Russo's complaint states a prima facie case for violation of substantive due process sufficient to survive a motion to dismiss. Accordingly, Marquis's motion to dismiss the Fifth Count is denied.

### 5. Intentional Infliction of Emotional Distress

■■ Finally, Marquis challenges the Ninth Count [19] for failure to state a cause of action for intentional infliction of emotional distress under Connecticut common law, specifically Marquis argues that Russo fails to allege conduct that would qualify as extreme and outrageous. Russo contends that the same conduct alleged for the substantive due process claim should be considered extreme and outrageous.

The court relies on the same standard for intentional infliction of emotional distress claims previously discussed. For the same reasons that the court concluded Russo's allegations described conscience-shocking behavior in the substantive due process context, the complaint describes extreme and outrageous conduct in excess of that normally tolerated by decent society. Accordingly, Marquis's motion to dismiss the Ninth Count is denied.

For the foregoing reasons, Marquis's Motion to Dismiss [Dkt. No. 147] is granted in part and denied in part. As to the procedural due process claims, the Third and Fourth Counts, the court lacks subject matter jurisdiction based on Russo's failure to exhaust. As to the other issues raised by Marquis, the motion is denied.

### IV. CONCLUSION

With regard to *Russo v. City of Hartford,* 3:97cv2380, Chief Croughwell and Captain Flaherty's motion to dismiss [Dkt. No. 140] is DENIED, and the City of Hartford's motion to dismiss [Dkt. No. 144] procedural due process claims in the Second Count and the entirety of the Fifth Count for lack of subject matter jurisdiction is GRANTED.

With regard to *Russo v. Bailey,* 3:00cv1794, the State Defendants' motion to dismiss [Dkt. No. 132] is GRANTED IN PART and DENIED IN PART. The claims for First Amendment violations, procedural due process, equal protection, and intentional infliction of emotional distress are dismissed for failure to state a claim. The court also grants the State Defendants qualified immunity for Fourth Amendment claims arising from their conduct in procuring Russo's prescription records and using those records to process his arrest. In all other respects, the motion is denied.

For the Union Defendants, the motion to dismiss [Dkt. No. 138] the intentional

---

state explicit claims under other constitutional doctrines, including the First Amendment, procedural due process, and equal protection. Nothing in the allegations states a claim beyond the ambit of those doctrines. Therefore, *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), prohibits the court from considering Marquis's failure to reinstate Russo as a substantive due process claim. Moreover, the allegations do not rise

to the level of conscience-shocking behavior required by the substantive due process standard.

**19.** The intentional infliction of emotional distress claim would be the eighth count of the complaint, but the plaintiff failed to include an eighth count in the Third Amended Complaint. To avoid confusion, the court refers to the claim as the Ninth Count.

infliction of emotional distress claim is GRANTED.

For the Police Defendants, the motion to dismiss [Dkt. No. 142] is GRANTED IN PART and DENIED IN PART. The claims for procedural due process and intentional infliction of emotional distress—except as it pertains to Defendants Croughwell, Lyons, and Lawlor—are dismissed, but the motion to dismiss is denied in all other respects.

For the City of Hartford, the motion to dismiss [Dkt. No. 176] is GRANTED IN PART and DENIED IN PART. The procedural due process claims in the Eighth Count are dismissed for lack of subject matter jurisdiction, and the First Amendment claim in the Eighth Count and the Ninth Count are dismissed for failure to state a cause of action. In all other respects, the motion is denied.

With regard to *Russo v. Marquis*, 3:00cv2382, Marquis's motion to dismiss [Dkt. No. 147] is GRANTED IN PART and DENIED IN PART. The procedural due process claims in the Third Count and the Fourth Count are dismissed for lack of subject matter jurisdiction. In all other respects, the motion is denied.

With regard to any motions to dismiss that were granted, the court grants such motions without prejudice to replead the claims, as indicated, if there is a factual and legal basis to do so that is consistent with this ruling and the August 2, 2001 Ruling. If the plaintiff seeks to replead, he must do so by February 19, 2002.[20] With regard to any motions to dismiss that were denied, the court denies such motions without prejudice to renew such argu-

ments in a motion for summary judgment upon further development of the record.

**SO ORDERED.**

**20.** With regard to any amended complaint, the plaintiff should not add new causes of action without leave of the court. The permission for amendment granted in this Ruling is limited to repleading allegations for specific causes of action, which the court has identified, to satisfy the legal requirements outlined in the Ruling.